FILED
CLERK
9/17/2013
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

1    UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK

2    ------------------------------

3    ANTONELLA CALABRESE et al,          Docket 13-cv-00637-LDW-GRB

                          *Plaintiff,*
4              v.                        United States Courthouse
                                         Central Islip, New York
5    TD BANK, N.A.,
                                         September 3, 2013
6                         *Defendant.*   11:45:17 am - 12:38:03 pm
     ------------------------------

7              TRANSCRIPT FOR CIVIL CAUSE
                    INITIAL CONFERENCE
8          BEFORE THE HONORABLE GARY R. BROWN
               UNITED STATES MAGISTRATE-JUDGE

9

10   A P P E A R A N C E S :

11   *For Plaintiffs:*          TROY L. KESSLER, ESQ.
                                Schulman Kessler LLP
12                              510 Broadhollow Road, Suite 110
                                Melville, New York 11747
13                              (631) 499-9100; (631) 499-9120 fax
                                tk@shulrnankessler.com

14

     *For Plaintiffs:*          JUSTIN MITCHELL SWARTZ, ESQ.
15                              Outten & Golden LLP
                                Three Park Avenue, 29th Floor
16                              New York, New York 10016
                                (212) 245-1000; (212) 977-4005 fax
17                              jms@outtengolden.com

18   *For Defendant:*           KATHLEEN MCLEOD CAMINITI, ESQ.
                                Fisher & Phillips, LLP
19                              4320 Mountain Avenue
                                Murray Hill, New Jersey 07974
20                              (908) 516-1050; (908) 516-1051 fax
                                kcaminiti@laborlawyers.com

21

22   *Transcriber:*             AAA ELECTRONIC SOUND REPORTERS
                                1133 Broadway, Suite 706
23                              New York, New York 10010
                                888-866-5135; 888-677-6131 fax
24                              electronicsound@court-transcripts.net

25        *(Proceedings recorded by electronic sound recording)*

*Antonella Calabrese et al v. TD Bank, N.A. - 9/3/13*          2

1          COURTROOM DEPUTY:  2013-637- Calabrese v. TD Bank.

2    Counsel, please state your appearances for the record.

3          MR. KESSLER:  Good morning, Your Honor, Troy Kessler,

4    of Schulman Kessler, for the Plaintiffs.

5          THE COURT:  Mr. Kessler, good to see you again, sir.

6          MR. KESSLER:  You as well, Your Honor.  Thank you.

7          MR. SWARTZ:  And Justin Swartz, from Outten & Golden,

8    also for the Plaintiffs.  Good morning, Your Honor.

9          THE COURT:  It's -- last name?

10          MR. SWARTZ:  Swartz, S-W-A-R-T-Z.

11          THE COURT:  Swartz.  All right.  Go ahead.

12          MS. CAMINITI:  Good morning, Your Honor, Kathleen

13    McLeod Caminiti, Fisher & Phillips, for Defendant, TD Bank.

14          THE COURT:  Ms. McLeod, good to see you.  Everyone

15    have a seat, please.

16          MR. SWARTZ:  Thank you.

17          THE COURT:  You can feel free to remain seated while

18    you speak, because the mics will work better and we will

19    actually have a record.

20          So, this is my first appearance on the case.  I know

21    there's a couple of motions pending.  Mr. Kessler/Mr. Swartz,

22    who would like to lead off?

23          MR. SWARTZ:  Sure.  Thank you, Your Honor.  Justin

24    Swartz for the Plaintiffs.  Your Honor, this is a case, a

25    misclassification case under the FLSA, the New York Labor Law,

*Antonella Calabrese et al v. TD Bank, N.A. - 9/3/13*          3

1   and several other state laws.  Our clients were assistant store

2   managers, assistant managers of bank branches, and they spent

3   almost all of their time doing non-exempt duties.  Their primary

4   duties were customer service and sales, and that included

5   working the teller line, making and receiving telephone calls,

6   answering customer questions, addressing things like overdrafts,

7   and sometimes dealing with loan applications.  They were sort of

8   utility players in the branch.

9          Each branch had a branch manager, our folks were not -

10  - their primary duty was not management, that was the job of the

11  branch manager.  Our folks filled in where it was needed.  And

12  what TD got from them is sort of the ability to plug people in

13  wherever they were needed and not incur overtime costs by doing

14  so.  And that's essentially our case.

15         THE COURT:  Okay.  And what kind of salary range do

16  these people generally get?

17         MR. SWARTZ:  They were generally -- it varied of

18  course from jurisdiction to jurisdiction, from location to

19  location, but thirties to sixties is my understanding; sixties

20  would be in New York and thirties would be elsewhere.

21         THE COURT:  And do you have any idea of an estimate of

22  the size of the collective action?

23         MR. SWARTZ:  We don't know for sure.  There are 1,300

24  branches in 15 states from what we can tell.  We'd estimate I

25  guess maybe between 2,000 and 3,000 total class members over the

*Antonella Calabrese et al v. TD Bank, N.A. - 9/3/13*      4

1    FLSA period, and the New York Labor Law period which stretches a

2    little bit further back.

3           THE COURT:  All right.  We can deal with both at the

4    same time.  I have your motion before me concerning the

5    collective action.  Preliminary certification, I'll call it.

6           How does that work?  In other words, you're asking to

7    contact the nationwide class.  You've brought claims under New

8    York/New Jersey/Pennsylvania and Maryland law.  How does that

9    square?

10          MR. SWARTZ:  Sure.  I can answer that in a couple of

11   ways.  With respect to the different laws that we've brought the

12   claims under, essentially, they're all exactly like the FLSA,

13   explicitly, or like the New York Labor Law follows the FLSA on

14   the exemption issue.  Or they're very, very similar so that a

15   trial of these claims would involve the exact same facts and

16   circumstances.  A jury may just need to be instructed slightly

17   differently for a subset of the class.

18          With respect to how the process works, the way that we

19   would see the process going, and I'm not sure if the Defendants

20   would disagree.  They can chime in.  But we think that notice

21   should go out early, as soon as possible, for two reasons.

22   First --

23          THE COURT:  Let me slow you down on that one.

24          MR. SWARTZ:  Sure.

25          THE COURT:  Before you get there, go back to the state

*Antonella Calabrese et al v. TD Bank, N.A. - 9/3/13*        5

1   law claim issue.

2          MR. SWARTZ:  Okay.

3          THE COURT:  When you say these state laws you selected

4   track the federal law more or less, I know for example, I'm not

5   going to use Maryland as my knowledge base because I don't do a

6   lot of Maryland cases.  But New York Labor Law has some

7   differences, right, so that the period can go longer.  There are

8   different types of liquidated damages or interest rates

9   depending on -- so how is that going to work when you have

10  people from Maryland where I don't know what the period is and

11  so forth?  And let's assume you get a bushel of folks from

12  California, and California Labor Law is yet something else.  Are

13  you going to seed certain rights and the New York folks who

14  could go back six years, are now going to have to go back three

15  because you're limiting it the federal equivalent?  How does

16  that work?

17         MR. SWARTZ:  No, Your Honor, we're not going to seed

18  those rights.  I think from a trial management perspective,

19  though, they don't matter and I'll explain why.

20         With respect to determining liability the same facts

21  will determine whether they're properly classified as exhibit or

22  non-exhibit, and so we'll be eliciting the same facts from the

23  opposing witnesses; we'll be eliciting the same testimony from

24  our witnesses about what their job duties were; and the other

25  side will be spending those job duties in a different way than

1　we've spun them.  And the jury will determine --

2　　　　　THE COURT:  I think they're going to say they're the

3　most crucial workers in the place.

4　　　　　MR. SWARTZ:  It's possible.  And --

5　　　　　MS. CAMINITI:  Hear, hear!

6　　　　　THE COURT:  Counsel, I'll give you plenty of time to

7　respond, but I'm just guessing.  Go ahead.

8　　　　　(Laughter.)

9　　　　　MR. SWARTZ:  We don't disagree that the place would

10　have trouble running without them, but that's because they were

11　doing the grunt work.  But the jury will then determine whether

12　they're exempt or non-exempt.  And I understand we're skipping

13　over the class certification issue.  If we can't convince the

14　Court that the class should be certified, then we won't be in

15　this position at.

16　　　　　THE COURT:  Right.  I guess I would be looking at your

17　motion a little bit differently.  You're saying we're looking at

18　all the New York employees, right?  Because then we have an

19　interesting sort of comparatives, right?  Or even if you said,

20　okay, the four states we named, New York, New Jersey,

21　Pennsylvania, Maryland; if you said that, I'd say okay with each

22　one of those four, you could sort of say are they four damages

23　groups?  But if we're going to get folks from 50 states in here,

24　I'm pretty sure that among the five people in this room, none of

25　know what the labor law is from certain states, right?  I know

*Antonella Calabrese et al v. TD Bank, N.A. - 9/3/13*          7

1    Louisiana, where they have a Napoleonic system or something, I

2    can see where that's going to get a little bit messy.

3          So my inclination, had you said well, we're just

4    looking a New York, some (indiscernible) folks, I'd say that's a

5    pretty easy call.  When you go nationwide, it gets a little more

6    complicated for the reasons I just suggested.

7          MR. SWARTZ:  Well, when you go nationwide, Your Honor,

8    it doesn't change the FLSA for one thing.  And so the motion

9    that we've filed now is we're asking to conditionally certify a

10   nationwide collective under the FLSA.  And then the next step

11   will be to see who joins the case.  Right now we have 14 people

12   on the case.  Let's say out of -- if I'm correct that there are

13   2,000 people in the class and we get an opt-in rate of maybe 20

14   percent, so there's another 400 people who join the case.

15         THE COURT:  Right.

16         MR. SWARTZ:  Then that becomes the collective under

17   the FLSA.  And then the question for later in the case, after

18   there's discovery on either all 400 of those people if that's

19   what the Defendants want or some subset, which we'd prefer; then

20   the question is are those people similarly situated to one

21   another and to the Plaintiff in a way that would allow a jury to

22   make a blanket determination about whether they're exempt or

23   non-exempt.  It doesn't matter from the FLSA perspective.  The

24   people who don't join the case, don't matter at all from the

25   FLSA perspective.

1      THE COURT:  Right.  I guess my only concern would be

2  are you potentially giving up rights for any groups of people.

3  And not knowing what all of the statutes look like, I don't even

4  know what the right answer is.

5      MR. SWARTZ:  Well, the answer is no.  In New York, for

6  instance, for part of the class period, we'd be entitled to 100

7  percent liquidated damages if the Defendants can't prove good

8  faith.  That's the same standard as under the FLSA where we'd be

9  entitled to liquidated damages if the Defendants can't prove

10  their case.

11      There are some states where it's not the Defendant's

12  burden to prove good faith, but it's the Plaintiff's burden to

13  prove willfulness in order to obtain liquidated damages.  That's

14  the same standard as the FLSA willfulness standard to determine

15  whether you go back two or three years.

16      And so again the facts -- what we're going to try to

17  prove at trial is not going to be different from state to state.

18  It's just the question of -- and it might not even be the jury

19  who does it.  It's more of a legal issue.  It is applying each

20  state's statute with respect to damages.  And not damages,

21  special damages; liquidated damages or other than back wages.

22  Because back wages are determined the same way everywhere, time

23  and a half.  And that's easy.

24      And so it's the same trial that we'd be putting on.

25  We'd be putting on the same witnesses whether or not we've pled

*Antonella Calabrese et al v. TD Bank, N.A. - 9/3/13*                    9

1  these different state law claims.  We could have pled the case

2  just as FLSA nationwide collective, and left if for somebody

3  else to sue on the Rule 23 class claims for each state, but we

4  didn't think that was in the best interest of the class or the

5  judicial system to have all those different trials, and so we

6  added the state law claims here.  Again, the state law claims

7  don't even come into play until the very end of discovery when

8  we move for Rule 23 class certification.  Right now, it's just

9  the FLSA claims.

10       THE COURT:  Based on the 14 Plaintiffs you have right

11  now, what's the general report in terms of how much overtime is

12  being worked?

13       MR. SWARTZ:  Well, between our people, the typical ASM

14  works about 50 hours.  Some worked more than 55 hours because

15  they worked generally six day weeks and the branches were open

16  generally pretty late.  And so these folks certainly weren't 40-

17  hour workers.  Most of our people said about 50; some said more

18  than 50; and some said more than 55.  It's not a huge wide range

19  like we've seen in some cases, but it's also not exactly the

20  same for everybody.

21       THE COURT:  Okay.  And one thing that troubled me was

22  the veiled of reference in your letter to incentive pay.  Is

23  this a commission job?

24       MR. SWARTZ:  I believe there's a commission component,

25  but it's not a sales commission.  I would say --

*Antonella Calabrese et al v. TD Bank, N.A. - 9/3/13*        10

1            THE COURT:  What you said was --

2            MR. SWARTZ:  -- more correctly a bonus component.

3            THE COURT:  -- it was subject to demanding individual

4    sales goals --

5            MR. SWARTZ:  Right.

6            THE COURT:  -- which determine their incentive pay.

7            MR. SWARTZ:  Yeah, which I think helped determine

8    their incentive pay.  But --

9            THE COURT:  Just as the title "manager" does not

10   basically exclude them, right?  We don't let the titles get in

11   the way --

12           MR. SWARTZ:  Correct.

13           THE COURT:  -- to what's really going on.  If this is

14   really a commission job, irrespective to whether they call it,

15   incentive pay or they call it coconuts, right, it doesn't

16   matter, if it's a commission job, it may well be excluded under

17   the FLSA.

18           MR. SWARTZ:  Oh, with respect to the exemptions?

19           THE COURT:  Yeah.

20           MR. SWARTZ:  Well, no, Your Honor, because there are

21   only two exemptions under the FLSA that could potentially come

22   into play with respect to commissions.  One, is the outside

23   sales exemption.  And that doesn't apply here because they're

24   not outside salespeople.  Outside salespeople are people who

25   customarily and regularly spend their time outside of the

*Antonella Calabrese et al v. TD Bank, N.A. - 9/3/13*      11

1    employer's place of business.

2             THE COURT:  Got that.  Go ahead.

3             MR. SWARTZ:  They're also not covered by what we call

4    seven-eye which is the -- the shorthand is the inside sales

5    position.

6             THE COURT:  Right, the commission -- the commission

7    jobs.  Sorry.

8             MR. SWARTZ:  Because in order for that to apply,

9    they're total compensation has to be comprised of at least 50

10   percent commissions.

11            THE COURT:  Right.  That was my question.

12            MR. SWARTZ:  And that's not even close to the case

13   here for anybody.

14            THE COURT:  Okay.

15            MR. SWARTZ:  And I don't know what defenses the

16   Defendants may have in mind, but --

17            THE COURT:  Yeah, I mean because -- look, there is an

18   issue if commissions are a significant portion of the --

19            MR. SWARTZ:  More than 50 percent, that's correct.

20            THE COURT:  I mean for obvious reasons, right, because

21   those folks want to work a long time because they're selling

22   things, you know.

23            MR. SWARTZ:  That's correct.

24            THE COURT:  I want to sell as many Maserati's as I can

25   because I'm making a fortune doing so.  I'm going to work a 100

*Antonella Calabrese et al v. TD Bank, N.A. - 9/3/13*        12

1   hour week if I can.

2            MR. SWARTZ:  Right.  That's right.  And the policy is

3   that if they get compensated for their success, more than 50

4   percent of their salary would be commissions.

5            THE COURT:  And you're confident that in no cases that

6   you've come across so far has that been the case?

7            MR. SWARTZ:  Well, we've talked to 14 people and it's

8   not even close.  Just respectfully, I don't know with respect to

9   the rest of the class, but I would be very surprised if the

10  Defendant said anything different.

11           THE COURT:  What is it that they're selling?  In other

12  words at the bank?

13           MR. SWARTZ:  Well, bank -- bank products.  I mean

14  everything from -- I mean they're convincing people to open

15  checking accounts; they're pushing people who came to open a

16  checking account to talk to the person who's selling loans.

17  They sell CDs.  I mean this is not a high level financial

18  products that we're dealing with, we're just talking things that

19  people do in a typical bank branch, not investment advisors.

20           THE COURT:  All right.  Let me hear from your

21  adversary.

22           MS. CAMINITI:  Good morning, Your Honor.

23           THE COURT:  Just pull the mic a little closer so I can

24  hear you --

25           MS. CAMINITI:  Sure.

*Antonella Calabrese et al v. TD Bank, N.A. - 9/3/13*        13

1      THE COURT:  -- and we have it for posterity.

2      MS. CAMINITI:  I think reading between the lines on

3  some of the Court's questions is a concern or it's certainly a

4  concern that my client has about opening Pandora's box and

5  issuing notice, a nationwide notice, before you have any idea of

6  what the case is about; what the issues are.  The fundamental --

7      THE COURT:  I'm not as concerned as you might think,

8  but go head.

9      MS. CAMINITI:  Okay.  Well, I wish you were more.

10  That's part of my job to convey to the Court that the

11  fundamental issue in this case is whether this putative class

12  was misclassified as exempt.

13      THE COURT:  Okay.

14      MS. CAMINITI:  So the question is --

15      THE COURT:  But they're looking at a single job title,

16  right?

17      MS. CAMINITI:  It's a single job title, but the

18  question that the Court, as you know probably better than I, you

19  look at what their primary duties are.  And the primary duties

20  here of these assistant managers include managing the store.

21  Just for your information, the store managers very often are out

22  developing business in the community.  That's one of their

23  primary roles.  So you know you have an issue with the -- they

24  are responsible for the in-store management.  They hire, they

25  fire, they write up CAPS or corrective action plans.  They do

*Antonella Calabrese et al v. TD Bank, N.A. - 9/3/13*        14

1   the scheduling.  They do a lot of the operational, proving the

2   vault, establishing -- you know, making sure that the Foreign

3   Corrupt Practices Act, that things are covered from an

4   operational aspect of the --

5           THE COURT:  I have to stop you there; I'm sorry.

6   These are bank branches all in the U.S. right?

7           MS. CAMINITI:  Yes.  I'm sorry; I misspoke.  The

8   foreign currency, not Foreign Corrupt Practices Act.

9           THE COURT:  Okay.  So that's the --

10          MS. CAMINITI:  The foreign currently, yes.

11          THE COURT:  That's the $10,000 thing?

12          MS. CAMINITI:  Yes.  Exactly.

13          THE COURT:  Okay.

14          MS. CAMINITI:  You know, they are --

15          THE COURT:  You mean like suspicious currency

16  transaction reports?  That sort of --

17          MS. CAMINITI:  Yeah, things like that.  And also

18  primarily they're involved in coaching, but I don't want you to

19  think in that particular case is what they spend their day

20  doing.  What they do is coach, supervise, manage the teller

21  line, the customer service line.  They are involved in those

22  issues intimately.

23          By and large, if you read the complaint, the

24  suggestion is that they have teller drawers and they're pulling

25  the teller drawer and taking people off the line.  That is not

1    the case.  The vast majority do not have teller drawers.  They

2    are responsible for the management of the employees within that

3    store.

4         THE COURT:  What I'm not hearing from you, counsel,

5    though, is that their duties are so different from one another

6    that it's not appropriate for -- in other words, that's your

7    contention; they're going to contend otherwise.

8         MS. CAMINITI:  Yes.

9         THE COURT:  But if they're all sort of similarly

10   situated, then we're kind of in business here, right?

11        MS. CAMINITI:  Well, no, not really because you're

12   dealing with 15 different states which make up a -- TD Bank has

13   acquired and has grown through acquisition in the last several

14   years.  So you have, for example, in the northeast in New Jersey

15   and Pennsylvania you have legacy Commerce employees.  In the

16   south, TD Bank barred some of the south branches, the Riverside

17   from the FDIC.  And those assets were acquired free and clear.

18   So it involves examination of the employment status, the paper

19   activities, and the duties and responsibilities of different

20   states.  And there are differences.

21        And one of the issues, and generally we agreed to a

22   discovery plan in accordance with Your Honor's worksheet, and

23   Defendant would like to fully brief this motion.  This is not a

24   simple motion --

25        THE COURT:  So that brings me to a different

*Antonella Calabrese et al v. TD Bank, N.A. - 9/3/13*       16

1   difficulty which you may not be aware of, depending on if you've

2   practiced in this courthouse before, there is on the worksheet a

3   final date about nine or ten months out.  Because these case are

4   in front of Judge Wexler --

5           MS. CAMINITI:  Mmhm.

6           THE COURT:  -- though you may have extremely

7   compelling reasons to push that date out, even recently

8   developed, he gives me no authority to do so.  So I will be

9   sympathetic; I will be empathetic; I'll listen; I'll hear you

10  out; and then I'll say I can't help you.

11          MS. CAMINITI:  Okay.

12          THE COURT:  So that deadline is a hard stop.  So for

13  you to write me and say Judge, I need a month to respond to this

14  motion because of the presence of Labor Day and the Jewish

15  Holiday, I can't help.  We've got to move this faster than that.

16          MS. CAMINITI:  Well, Your Honor, there's --

17          THE COURT:  So if you want to write me a letter brief

18  by say the end of this week, I'm happy to let you do it.

19          MS. CAMINITI:  Your Honor, that -- with all due

20  respect, counsel has agreed to that.  It's a very serious --

21  this is a very serious issue.  Their submission in itself is

22  this thick as the Court knows.  When you add all of the

23  attachments.

24          THE COURT:  Well, wait; what sub --

25          MS. CAMINITI:  This is --

*Antonella Calabrese et al v. TD Bank, N.A. - 9/3/13*      17

1          THE COURT:  What submission are we talking about?

2     Hold on.  Hold on.  I have a letter from August 28.  Are we

3     talking about the August 28 letter?

4          MS. CAMINITI:  Right.  But there are 200 pages of

5     attachments to that letter.

6          THE COURT:  Well --

7          MS. CAMINITI:  And Your Honor, those --

8          THE COURT:  -- I will confess I did not read the 200

9     pages of attachments.  I think the issue is pretty

10    straightforward.

11         MS. CAMINITI:  It's not, Your Honor.  Typically, these

12    motions are presented to the district judge or to Your Honor on

13    a full briefing because they aren't a simple discovery motion.

14         THE COURT:  But this is the preliminary certification.

15    We're not talking about --

16         MS. CAMINITI:  Yeah.  Right.

17         THE COURT:  -- certifying the class right.

18         MS. CAMINITI:  I understand that.

19         THE COURT:  This is just whether they have the right

20    to get the names from you --

21         MS. CAMINITI:  Right.

22         THE COURT:  -- give out notice, and see if there are

23    other people who are interested.

24         MS. CAMINITI:  Absolutely not.  It involves giving

25    notice to, he's right, about 2,500 people.

*Antonella Calabrese et al v. TD Bank, N.A. - 9/3/13*     18

1          THE COURT:  Okay.

2          MS. CAMINITI:  Which from our perspective we believe

3     open Pandora's box.  You've got certifications from 13 people

4     which represent about 17 out of over 1,300 branches.  So you're

5     dealing with approximately one percent of the entire population

6     based on the certification before the Court.

7          You've got only half the states represented; you've

8     got conclusory, very conclusory affidavits which the second

9     circuit no fewer than three times in the Lundy Trilogy have

10    really come down hard on these kind of cookie cutter pleadings

11    and certifications in FLSA cases.

12          In this case, the recitations are almost identical

13    regarding the ASM's typical duties in the submissions here.  We

14    would like the opportunity to show the Court that all of these -

15    - the ASM's, the duties and responsibilities are not similarly

16    situated; they vary by store to store.  There are individuals

17    for example who have run the store in the absence of a store

18    manager for eight or nine months.

19          There are other issues that come to place.  Typically,

20    including last week, the Southern District in the *Fernandez*

21    case, decided for Wells Fargo not to conditionally certify a

22    class.  That was on full briefing and it enables the Court to

23    examine and elucidate issues.

24          In this case, I would be willing to say that the

25    issues -- you know if it were a three page letter, without

*Antonella Calabrese et al v. TD Bank, N.A. - 9/3/13*       19

1   attachments we might be having a different discussion.  But this

2   is the rest of the attachments, Your Honor.  It's an inch and a

3   half full of material from which the Plaintiffs wish for you to

4   just make a broad breast conclusions that they're similarly

5   situated.

6           The shear cost of issuing notice and the ramifications

7   from issuing notice are very, very severe.  The briefing in this

8   case -- and it doesn't have to be on a long string.  We're

9   talking about a matter of a few weeks, will help elucidate the

10  factual and legal issues.  And from that we should be able to

11  narrow issues.

12          THE COURT:  But you would agree with me that the

13  initial certification -- I'm going to call preliminary

14  certification --

15          MS. CAMINITI:  Right.

16          THE COURT:  -- is a fairly low burden.

17          MS. CAMINITI:  Yeah, as the Second Circuit in *Myers*

18  said it's low or modest but it's non-existent.  And you see more

19  and more cases --

20          THE COURT:  But, counsel, you would agree with me on

21  these facts; you're a single employer with a single job category

22  that they've targeted, right?  It's not like they're saying all

23  of your employees in all different -- they're not looking --

24  it's not one of these cases where they're looking at the janitor

25  and the vice presidents, right?  They're looking at a single

*Antonella Calabrese et al v. TD Bank, N.A. - 9/3/13*          20

1    category, assistant managers.  I think you would agree with me

2    that those folks work overtime and don't get paid for working

3    over time.  Is that fair?

4          MS. CAMINITI:  I would agree with you that they're

5    exempt and they don't get paid because they're exempt.

6          THE COURT:  Right.  But we know those -- in other

7    words that they work more than 40 hours and they don't get paid

8    for it.  I mean it's a pretty narrow range.  And when you say

9    2,500, I appreciate the problems that creates for the bank; I

10   appreciate the burden on the various parties, although they

11   probably pay for the mailing in the first instance.  You may pay

12   for it in the long run.  But at the same time, when you say

13   2,500, that's a very small number as compared to some of the

14   cases that I deal with here.  I deal with cases that are in the

15   millions.

16         MS. CAMINITI:  Yeah, of course, Your Honor, but --

17         THE COURT:  So it's not --

18         MS. CAMINITI:  -- the issues are -- but the question

19   is whether they're similarly situated; what they're primary

20   duties are.  We are not asking -- we would like this issue --

21   it's an important issue.  It's an issue that's going to dictate

22   quite of bit of what happens next in the case for the

23   opportunity to argue our point as is typical in these cases.

24   Almost always there is an opinion.  It's not a slam-dunk or a

25   rubber stamp conclusion.  It will narrow --

1    THE COURT:  Right.  I honestly can't give you another

2  month to dilly dally around this.  We have to move on it.  And I

3  recognize -- I am not suggesting that I'm going to issue a

4  thoughtless opinion --

5    MS. CAMINITI:  Oh, I never would suggest that.

6    THE COURT:  -- however, the point is a lot of the

7  issues you raised, for example, the differences between

8  individuals, some of whom might say oh, I work there, in some

9  senses to preclude them from getting the certification at this

10  point, essentially says to them, well, guess what, you'll have

11  to take it on faith that there's such differences between these

12  folks because we're not going to let you find out.  We're not

13  going to tell you who they are; we're not going to give you

14  discovery; we're not going to let you contact --

15    MS. CAMINITI:  That's not the case at all, Your Honor.

16  We're prepared to propose -- we have proposed a discovery plan

17  with an end date that is the end date that was included in your

18  rules.

19    THE COURT:  Right.

20    MS. CAMINITI:  We're not looking to delay; we're

21  looking just to have this important issue --

22    THE COURT:  But -- no, no.  But I'm just trying -- I'm

23  trying to do the outcome tree here.  In other words if you'd

24  walked in this morning and said, oh, gee, Judge, there's

25  something else, right.  In Maryland, folks are exempt.  Right?

*Antonella Calabrese et al v. TD Bank, N.A. - 9/3/13* 22

1    There's that whole class we can carve out right there.  Or

2    something, then I'd be listening differently.

3            But what I'm hearing from you is the sole defense

4    you're going to present to me is that these people have

5    different responsibilities.  And they're not sort of doing the

6    same thing in all these different places.

7            MS. CAMINITI:  But that's not entirely true, Your

8    Honor, because --

9            THE COURT:  What else do you have?

10           MS. CAMINITI:  Well, for example, the TD Bank, legacy

11   TD Bank folks that would be New York, Maine, and up; those

12   employees were subject to a different timekeeping system and

13   different pay practices and different duties and

14   responsibilities than the folks in New Jersey and Pennsylvania,

15   who are Commerce than in the south, which were --

16           THE COURT:  Well, that's an interesting question.

17           MS. CAMINITI:  -- acquisitions by Riverside Financial.

18           THE COURT:  Actually the acquisition point was

19   interesting to me.  I mean the one question I would have is if

20   these folks were subjected to different practices prior to the

21   acquisition, I'm not sure that would necessarily be included

22   here.  In other words, I think the day that you buy Commerce

23   Bank, you change the pay practices, that may well exclude those

24   folks from consideration for the prior period I think.  I'm

25   not--

1          MS. CAMINITI:  Well, that's another reason why we feel

2    that it's important to narrow the issues and elucidate the

3    issues on briefing because there may be issues that either

4    counsel -- and we talked about this before -- or the Court can

5    address before issuing notice to everybody from February 2010 to

6    date where all of those acquisitions took place.  And so the

7    idea --

8          THE COURT:  They all took place afterwards?

9          MS. CAMINITI:  They took place, for example, in that

10   time period.

11         THE COURT:  Right.  So that's an interesting carve-

12   out, right?  That might be a carve-out --

13         MS. CAMINITI:  Right.

14         THE COURT:  -- in issuing the notice.  In other words,

15   maybe if you're a Commerce employee you're only eligible

16   potentially from this time period going forward.  I don't know.

17   And I see some head shakes over there; they may not agree with

18   that analysis.

19         MS. CAMINITI:  But Your Honor I think --

20         MR. SWARTZ:  I'm sorry.

21         THE COURT:  You would agree with that?

22         MR. SWARTZ:  Well, sure.  I mean if somebody -- first

23   of all is somebody is not a commerce employee during a certain,

24   they definitely don't get notice.

25         THE COURT:  Right.  But I'm saying let's say they

1  bought Commerce -- well, do you know when you bought Commerce,

2  just by way of example?

3          MS. CAMINITI:  I do.  Within in 2008, but the

4  integration was a longer time period.  For the integration of

5  pay practices was June of 2010.

6          THE COURT:  Okay.  So theoretically those folks may

7  only be eligible for coverage from June of 2010 through the end

8  of the period potentially.  Potentially.

9          MR. SWARTZ:  That's fine, Your Honor.  And if the

10  Defendants were to agree to conditional certification, we would

11  agree that it would only go back to June of 2010 for the

12  Commerce legacy employees.

13          THE COURT:  I mean there could be some finer points,

14  but you're still notifying the same folks.

15          MS. CAMINITI:  Right.

16          THE COURT:  Right?

17          MS. CAMINITI:  Well, yes and no, because some of them

18  would not have been employed during that time period.  So you're

19  getting -- you're sending notice, inviting people to a party,

20  and then saying well, you can't get in the door because you

21  didn't meet this qualification because you weren't --

22          THE COURT:  So you would eliminate --

23          MS. CAMINITI:  -- employed during that time period.

24          THE COURT:  Got it.  You would eliminate people who

25  say left the bank, resigned before June of 2010.

*Antonella Calabrese et al v. TD Bank, N.A. - 9/3/13*      25

1           MS. CAMINITI:  Right.  Exactly.

2           THE COURT:  I think you could probably narrow it

3   around the edges --

4           MS. CAMINITI:  Right.  Well, that would be --

5           THE COURT:  -- that way.

6           MS. CAMINITI:  Well, that would be one of the issues.

7   And frankly, the other piece, Your Honor, is I don't think that

8   Plaintiffs' counsel intended to sandbag the Defendants by filing

9   the motion right before Labor Day.  And in fact they were

10  willing to give us --

11          THE COURT:  I'm confident that was not --

12          MS. CAMINITI:  They were not.

13          THE COURT:  -- their intent.

14          (Laughter.)

15          MS. CAMINITI:  No.  And they've been -- I think all

16  counsel here would agree that we've been professional and

17  courteous so the issue is from Defendant's perspective ample

18  time to respond to a motion that's been the works.  I mean some

19  of these certifications --

20          THE COURT:  But at the end of the day, if you were to

21  prevail across the board on absolutely no certification; we're

22  just going with 14 folks; then it doesn't even matter what your

23  discovery schedule says, you folks could do that discovery in

24  two weeks to get ready for trial if there's only 14.  If it's

25  2,500, we have a lot more work to do.  And that's the part that

*Antonella Calabrese et al v. TD Bank, N.A. - 9/3/13*      26

1  bothers me.

2          MS. CAMINITI:  Right.  But, this would --

3          THE COURT:  At this point, you know.  So I don't --

4          MS. CAMINITI:  I didn't mean to interrupt you.

5          THE COURT:  No, no.  That's okay.  And I don't want to

6  sandbag you by say giving you, I don't know, a winter time

7  holiday opinion that says guess what, now it's 2,500, get back

8  to work.

9          MS. CAMINITI:  Well, I don't think that the counsel

10  would expect that there would not be activity in this case

11  during the briefing.  In fact --

12          THE COURT:  Do me a favor --

13          MS. CAMINITI:  -- you know the idea --

14          THE COURT:  -- hand up the schedule that you drafted.

15          MS. CAMINITI:  Yeah, of course.  The idea is that we

16  would do initial disclosures, serve discovery and all of that

17  immediately.  Well, in the next few weeks.

18          THE COURT:  So we would have a schedule by which you

19  would be completing discovery on May 30 of 2014.  And I have to

20  tell you that there is a very reasonable likelihood, assuming

21  Judge Wexler remains your judge and we stay on track as we need

22  to, you may be on trial in this matter in June or July.

23          MS. CAMINITI:  Okay.

24          THE COURT:  So keeping that in mind, we have to sort

25  of plan this appropriately.  So we can't spend that much time on

*Antonella Calabrese et al v. TD Bank, N.A. - 9/3/13*        27

1   the preliminaries.

2          I haven't heard anything from you that would be the

3   elephant gun that would kill off preliminary certification in

4   its entirety.  In other words, with the sole exception, the only

5   argument I've heard from that could potentially weigh against

6   preliminary certification would be the argument that the duties

7   different from person to person and place to place.

8          MS. CAMINITI:  Well, Your Honor, but the similarly

9   situated question when Your Honor looks at it will be a question

10  of whether this is a blanket statement by Plaintiffs in their

11  certification that they perform non-exempt duties such as

12  running the teller line, etcetera.  And you will weigh that

13  against the more detailed certifications or declarations that we

14  expect to produce.  And in those particular classes, for

15  example, the Marshall's case in the Southern District, the

16  Fernandez case that the Court decided last week; when you look

17  at it all together, those issues will become crystallized and

18  clear.

19         THE COURT:  Right.  But isn't your request there

20  really an effort to get me to give you an implicit summary

21  judgment?

22         MS. CAMINITI:  No.

23         THE COURT:  In other words, you're going to say look,

24  Judge, it's nonsense, of course they're all exempt.  And I'll

25  say, okay, yeah, you're right, they're all exempt; I'm not

*Antonella Calabrese et al v. TD Bank, N.A. - 9/3/13*　　　28

1　certifying the class.

2　　　　　　MS. CAMINITI:  No, not at all.

3　　　　　　THE COURT:  That's really summary judgment, right?

4　　　　　　MS. CAMINITI:  Not at all.  In fact, their case law is

5　(indiscernible).  You know even if you were to deny the motion

6　in the first instance, at the second, there's another

7　opportunity for Plaintiffs' counsel to say hey, we've had

8　discovery and we want to come back and conditionally certify

9　that.  I mean there are a number of bites of the apple.  The

10　question is should this case be certified on such short -- from

11　the tenant's perspective, it's a very important issue on such

12　short notice without ample briefing.  And frankly I think that

13　the issues will be narrowed with briefing.  So that even if the

14　Court decides to conditionally certify the case, that some of

15　those issues and issues of notice can either be worked out by

16　agreement with counsel, or with the Court's guidance.  And that

17　we all benefit from that.  So that is an important consideration

18　as well.

19　　　　　　You know we are very concerned that and more concerned

20　now that I sit here that you know we're confronted with such an

21　extensive motion before such an important issue to our client

22　and not have the opportunity to fairly respond, especially when

23　it will not impact anything else in the case.  We'll serve our

24　discovery.  There's no other -- nothing will change.

25　　　　　　THE COURT:  You're going to identify for them then all

*Antonella Calabrese et al v. TD Bank, N.A. - 9/3/13*                29

1  2,500 folks who would otherwise be in the class even if I

2  don't --

3            MS. CAMINITI:  Not at this point, no.

4            THE COURT:  So --

5            (Chuckling.)

6            MS. CAMINITI:  But the issues of -- I mean certainly

7  those issues --

8            THE COURT:  But don't they have the right to --

9            MS. CAMINITI:  -- can be held in abeyance.

10            THE COURT:  Don't they have the right to explore.  In

11  other words, your argument is going to be as we've predicted it

12  here, they have different types of responsibilities.

13            MS. CAMINITI:  Right.

14            THE COURT:  And somebody from Birmingham, Alabama -- I

15  don't know if Alabama is in the case -- has a very different job

16  as the assistant management than somebody in New York or

17  somebody in Maryland.  Don't they have the right to have that

18  list so they can sample and find out if that's accurate?  You

19  can give me 40 declarations from people who have -- I'm an

20  assistant manager, but my job is to paint.  I paint the

21  building, right?  I'm an artist and they hired me as a special

22  assistant manager in a very artistic community, right?

23            You see if you give us the artistic one, don't they

24  have the right to make some calls, and say does anybody else

25  paint, because I got this one guy who -- you know.  I don't see

*Antonella Calabrese et al v. TD Bank, N.A. - 9/3/13*          30

1   how we can sort of say to them well, we're not going to give you

2   a certification and we're not going to tell you who the other

3   2,500 are.  You just have to take it on faith that whatever

4   sampling that the bank does and decides to present, they have to

5   live with that.

6          MS. CAMINITI:  Well, that's not the case at all, Your

7   Honor.  I would think first of all I think we're a little bit

8   far down the path in terms of what the discovery might be, but

9   it might be that they say you know, give us the sampling and

10  then we would work out parameters for sampling.  And you know

11  those sampling issues would be addressed at the same time.  So

12  that we'd be dealing with those issues.  They're not mutually

13  exclusive.

14         Now, that doesn't mean that we need to give them the

15  class list at this point, because then we open a whole other

16  door about types of communications, etcetera.  I would want to

17  look at the law at least before I formed a position here.  But I

18  have had in other cases where you have sampling.  You know you

19  pick a random way to sample, and that throws out we've done

20  seven percent, you know.  And there's a way to address that

21  without him handing somebody the class list ten minutes after

22  the -- or weeks after the initial case management conference.

23         THE COURT:  I'm going to go back --

24         MS. CAMINITI:  May is a fair --

25         THE COURT:  I'm going to go back to your adversaries

*Antonella Calabrese et al v. TD Bank, N.A. - 9/3/13*      31

1  with a question.  But before I do that, I have one question for

2  you.  Are there time records on these folks?

3          MS. CAMINITI:  Not -- I don't believe so.

4          THE COURT:  Uh-oh.

5          MS. CAMINITI:  There's a possibility, though I don't

6  want to say out and out no.  Though I don't believe so.

7          THE COURT:  Is there any way to cobble together in

8  other words their parking badges or --

9          MS. CAMINITI:  That's my hesitation, and that's why I

10  hesitated in terms of whether there's a reasonable facsimile for

11  purposes of logging onto the computer.  Records that would

12  reasonable identify by time.  Certainly they weren't punching a

13  clock to answer Your Honor's question truthfully.

14          THE COURT:  Okay.

15          MS. CAMINITI:  But that doesn't mean that there's not

16  a reasonable analog for purposes --

17          THE COURT:  It will serve you well irrespective of

18  what else we decide today to get working on that because that's

19  going to be a hot button issue in the case, right?  I mean if

20  there's some time records, at least we can kind of scope the

21  case and figure out what else, how else to approach it.  If

22  there's nothing, then we've got a lot of work to do.

23          MS. CAMINITI:  Understood.  I guess the other --

24          THE COURT:  Sorry?

25          MS. CAMINITI:  I apologize.

1    THE COURT:  Yeah, go ahead.

2    MS. CAMINITI:  There were some factors when we talked

3    about a brief.  We said well, there were some personal factors

4    that counsel was fair enough to -- or considerate to.

5    THE COURT:  And I know -- I know counsel will be very

6    decent here, so I get it.  I hear you.  But I just want to leave

7    myself in a position to give you a reasoned decision and do so

8    in a time period that allows you to do what you need to do, and

9    not find yourself on trial in June not having done the discovery

10   you need to do.

11   MS. CAMINITI:  Yes.  I understand.  One other factor.

12   We were looking not only for time, but also for the opportunity

13   to file longer than a three-page brief; that it would be

14   appropriate given the issues.

15   THE COURT:  Well, if they filed 200 pages in

16   attachments you clearly know the loophole around my three-page

17   brief rules.

18   MS. CAMINITI:  I think it might be easier for the

19   Court to have it sorted out for you.

20   THE COURT:  And sometimes it is.  Well, we can have a

21   long discussion about the viability and wisdom of page limits

22   but that's something that we'll with another time.

23   Gentlemen, let me go back to you.  If we were in a

24   position where you did not get the preliminary certification you

25   were seeking, would you seek the names of the 2,500 or so ASM's

*Antonella Calabrese et al v. TD Bank, N.A.* - 9/3/13          33

1   as part standard discovery in this case in any event?

2              MR. SWARTZ:  I believe so, Your Honor.  We haven't

3   been in that position but I think that that would be an

4   appropriate request.

5              THE COURT:  Okay.  Do you have anything else you want

6   to respond to in terms of what counsel said so far?

7              MR. SWARTZ:  Just a few things, Your Honor.

8              THE COURT:  Sure.

9              MR. SWARTZ:  With respect to the case law that counsel

10  cited, I can respond I think in a broad brush by making two

11  points.  One is that the cases that counsel cited were either

12  not misclassification cases -- so the Wells Fargo case was just

13  decided in the Southern District.  That was an off-the-clock

14  case.  A bunch of different branches --

15             THE COURT:  That was, I'm sorry?

16             MR. SWARTZ:  An off-the-clock case.  I bunch of

17  different bank branches where the Plaintiffs were claiming that

18  some people worked off the clock and didn't get paid for it.

19  And there was no centralized evidence -- there was no evidence

20  or I don't even know if there was an allegation of a centralized

21  policy requiring this off-the-clock work.  That's very different

22  than what we're talking about here.  One single job title being

23  misclassified in one fell swoop.

24             Second, those cases and every other case -- and I can

25  say that with almost 100 percent confidence because I think I've

*Antonella Calabrese et al v. TD Bank, N.A. - 9/3/13*          34

1    read almost all of them.  Every other case where a conditional

2    certification has been denied in this district have had far, far

3    less support than our case here.

4              THE COURT:  Less?  I'm sorry; I didn't hear you.

5              MR. SWARTZ:  Less support.

6              THE COURT:  Support.  Okay.

7              MR. SWARTZ:  Our case here, we have -- you know

8    although opposing counsel was artful in diminishing the support

9    that we have, it's really quite significant as far as these

10   motions go.  We've submitted declarations from people in 7 out

11   of 15 different states where this company has branches.  Those

12   folks worked in more than one branch.  Some of those folks

13   worked in more than one branch in each state.  And so I believe

14   we have more than 15 different branches covered.

15             And so although it's a low percentage, if you look at

16   it overall, there hasn't been a single opinion in the second

17   circuit denying conditional certification with such support.  In

18   fact there have been many with much less support.  The Wells

19   Fargo case for instance, there were three Plaintiffs and that

20   was it.  And that was an off-the-clock case.  And so just the

21   evidence that we've submitted far exceeds the low threshold that

22   most courts follow in the second circuit.

23             Second, with respect to the process; Your Honor, asked

24   whether we would ask for the class list and then go ahead and do

25   discovery on as many people as we could get to respond to us in

1   an informal way and maybe some of them formally, it's a big

2   waste of time respectfully.  Because --

3          THE COURT:  Okay.

4          MR. SWARTZ:  Because that's --

5          THE COURT:  Well, not if she's arguing that they all

6   have different responsibilities.

7          MR. SWARTZ:  Well, it's still a waste of time Your

8   Honor and the reason is because again under the FLSA the only

9   people who matter are the people who actually join the case.

10  And so we would spending thousands of hours, calling people,

11  getting declarations, submitting declarations.  And a lot of the

12  people who we would contact or who we would even do formal

13  discovery on, or you know one of the things that we often do in

14  these cases is depose store managers.

15         THE COURT:  Right.

16         MR. SWARTZ:  You could depose a store manager; you can

17  find out about a bunch of different assistant managers who

18  worked under that person.  So that's sometimes a good discovery

19  method.  But we may depose ten store managers who supervised 30

20  assistant managers, none of whom join the case.  This two step

21  process makes a lot of sense because it allows us to focus on

22  the people who matter, those are the people who actually join.

23  And then if we could do this very quickly, and again I'm happy

24  to -- I don't oppose any extension that counsel requests because

25  of personal reasons of course, but the quicker we can do this,

*Antonella Calabrese et al v. TD Bank, N.A. - 9/3/13*        36

1   the quicker we can get notice out; find out who's in the case;

2   and focus our discovery efforts on those people.  And that's I

3   think the most important point.

4           THE COURT:  Okay.  What do you expect based on your

5   experience in similar cases?  When you send out 2,500 notices,

6   what kind of return rate do you expect in opt-in Plaintiffs?

7           MR. SWARTZ:  I can say in all cases without

8   segregating based on different factors, between 10 and 20

9   percent, maybe a little bit more.  I mean we'd be more generally

10  happy with a 30 percent return rate.  We think that that's a

11  good participation rate.  In bank cases --

12          THE COURT:  So we would expect a three -- a manageable

13  three digit number of opt-in Plaintiffs.

14          MR. SWARTZ:  That's what we'd expect, sure.

15          THE COURT:  All right.  First of all, let me say that

16  the discovery worksheet looks fine to me, and this will be

17  entered as the order of the Court.  I will reiterate that Judge

18  Wexler does not allow me to change that last date, so again if

19  you have some very compelling reasons, you can tell them to me

20  and I'll listen and be kind, and say I'm sorry to hear that and

21  then I won't be able to help you at all.

22          (Laughter.)

23          THE COURT:  So just keep that in mind.  Realistically,

24  counsel, you should expect to go to trial next summer.  Judge

25  Wexler tends to put on a lot of cases in June and July, and I

1  would expect that this case would be one of those cases that's

2  going to be tried unless we can come up with another way to

3  resolve it, but we'll talk about that momentarily.

4          In past -- oh, and counsel just for your edification

5  in case you haven't come across Judge Wexler's practice before,

6  you may be thinking oh, well, the Magistrate Judge is saying all

7  these things, but I'll just simply make a summary judgment

8  motion in around May or so, and put this off until -- it will

9  not work.  He's just likely to say we'll deal with that after

10  the trial or something.  So really, really I'm urging everyone

11  be ready to go forward with this.

12          Counsel, I understand you have some person issues.

13  I'm not going to give you a hard time about that.  October 4 is

14  fine.  Let's keep it to three pages with whatever attachments

15  you want.  I get the issues; it's pretty straight forward and

16  I'll make a call based on what you can show me.  Okay?  So I'm

17  happy to listen; we'll keep an open mind on that.

18          Just so you're all prepared and this is not a ruling

19  or even advice, just an observation I made, in similar cases in

20  the past, Judge Wexler will not let you call 415 witnesses.

21  What he'll tell you is look, take a sample, agree.  Pick a

22  sample of witnesses, one from each sort of if there are

23  categories.  Here it could be one from -- if you have seven

24  states, one from each state.  Right?  He might let you call

25  four, five, six of the Plaintiffs.  But that's going to be it.

*Antonella Calabrese et al v. TD Bank, N.A. - 9/3/13*          38

1    It's not going to go on for weeks and weeks.  It's not going to

2    be Google v. Apple or something, you know.

3            He's going to keep a very, very to the point effective

4    trial, very efficient trial, and you'll have to think about how

5    to manage that.  In other words how are you going to pick out

6    representative witnesses.  And you should really think about

7    that, and plan to work with those folks assuming the class goes

8    forward.  And I'm not prejudging anything, counsel.  We'll take

9    a look at your papers and deal with it accordingly.

10           I do recognize Plaintiff's counsel's point that if

11   they start randomly calling people off the 2.500 list, that I

12   would likely -- that one I could tell you, I would likely make

13   you turn that over if they requested that.  If they start

14   calling people it's a waste of time because there's a 70 percent

15   chance anybody you're calling is not going to be an opt-in.  so

16   you're sort of stirring up more trouble in some senses.  So I do

17   think that it's a good point.

18           So I'll accept the date that you submitted, the

19   October 4 date.  Get me the papers by then.  I will render a

20   decision as quickly as possible on that --

21           MS. CAMINITI:  May I raise --

22           THE COURT:  -- so you'll be in a position to go

23   forward.  Counsel?

24           MS. CAMINITI:  May I raise one more issue --

25           THE COURT:  You may.

1          MS. CAMINITI:  -- And I raised it --

2          THE COURT:  You can raise three more.  I'm having a

3    sale today.

4          (Laughter.)

5          MS. CAMINITI:  Thank you.  I raised it a little bit

6    with counsel before we met with the Court.  There are really two

7    issues.  One here is the facts of whether notice will be issued.

8    And the other is the issue of the content of the notice.  And

9    that also opens issues of the time periods that we talked about

10   earlier.  If counsel can agree to separate those two issues out,

11   would that be acceptable to Your Honor?  In other words --

12         THE COURT:  Did you give me the proposed notice

13   already?

14         MS. CAMINITI:  Yes, Your Honor.

15         MR. SWARTZ:  Yes, Your Honor.

16         THE COURT:  You did.

17         MR. SWARTZ:  Yes.

18         MS. CAMINITI:  So -- I mean that's --

19         MR. SWARTZ:  It's Exhibit A, Your Honor.

20         MS. CAMINITI:  That notice itself has a lot of issues

21   subsumed in it in terms of the time period; how things are

22   described; etcetera.

23         THE COURT:  And I'm sorry; finish your proposition.

24   If they were to agree to separate that out?

25         MS. CAMINITI:  My proposition was whether we could

1    kind of move that to the side and deal with the question of

2    whether noticed would be issued.  And then shortly thereafter,

3    decide the content --

4              THE COURT:  I said yes to that, can you get your

5    response to that faster?

6              MS. CAMINITI:  No.

7              THE COURT:  Well, then you're not helping me at all.

8              (Laughter.)

9              MS. CAMINITI:  That's what they said.  But I do think

10   that that issue -- there are issues hidden in there that can be

11   addressed --

12             THE COURT:  Well, what I was going to suggest on that

13   score was that you should -- because you're all fairly

14   experienced.  When I say fairly, I'm under selling it, right?

15   You're all very experienced in this area, and you all seem quite

16   reasonable.  I was going to suggest that you try to start

17   working it out, because I will tell you what will happen if you

18   can't agree on what the notice should say, is I'll decide on

19   what the notice will say, and everyone will be unhappy, because

20   I'll get it wrong.  I'll miss some of the nuances that both

21   sides care about.  So I would suggest that that's something that

22   you should work out amongst yourselves, because if you can't --

23   or at least if you work out a bunch of them if you can, just

24   highlight for me these are the three issues we have, right?  Or

25   something like that.

1          MS. CAMINITI:  So that Your Honor, just to carry that

2    thought through, would it be possible to have -- to request in

3    our briefing that the Court -- if the Court orders notice that

4    counsel agree to a notice within three days or something

5    afterwards to allow that to happen?

6          THE COURT:  I was suggesting that a slightly different

7    way, which is why don't you sit down with counsel today, and

8    sort of say these are my issues, can we talk some of these

9    through?  In other words -- so this way you won't have to brief

10   me on ten points, you can brief me on four points or something.

11   Or maybe you'll both, all be of a mind and you'll say there's no

12   issues at all, we've agreed that should notice have to out, it

13   would go out in this form.

14         MS. CAMINITI:  Understood.

15         THE COURT:  And in fact, I'll invite you to use my

16   witness room in the back.  I'm buying, right?  You can use the

17   room and space and sit down and see if there are issues you can

18   talk through just to reduce sort of what we'll have to go

19   through assuming we get to that stage.

20         MR. SWARTZ:  All right.

21         THE COURT:  All right?

22         MS. CAMINITI:  Thank you very much.

23         THE COURT:  Anything else I can help with today?

24         MR. SWARTZ:  Well, Your Honor, just one step further

25   in the subject we were just talking about.  I think to be fair

1   if we -- I think we'll be able to agree on a notice.  We rarely

2   litigant the contents of the notice.  It's usually not that

3   important, the things the Defendant opposes.  If there is

4   something, maybe we could try to resolve any issues maybe in the

5   next two weeks.  And then if we don't resolve those issues, we

6   can submit them to Your Honor to decide simultaneously.

7          THE COURT:  Well, what I'm suggesting is the Defendant

8   can bring those to my attention in her letter brief, right?

9   She'll say we've agreed on everything except I want the second

10  page in Greek letters, and they want it in Latin, Roman numerals

11  or something.

12         MR. SWARTZ:  We'll go with Greek.

13         THE COURT:  Whatever.  So if you can get them done

14  ahead of time that would really be great.

15         MR. SWARTZ:  Yeah, I guess what I was suggesting was

16  that maybe we can submit that issue simultaneously with -- so we

17  can submit a brief at the same -- we can submit maybe a one page

18  letter or something at the same time as they do.  Just so that

19  it doesn't carry over.

20         THE COURT:  Well, I would -- I would give you a very

21  short turnaround time.

22         MR. SWARTZ:  Okay.  That's fine.  Thank you.

23         THE COURT:  In other words, we're saying October 4,

24  I'm going to want something from you let's say by the 11th, the

25  following Friday, so we can put this to bed.

*Antonella Calabrese et al v. TD Bank, N.A. - 9/3/13*        43

1          MR. SWARTZ:  That's fine.

2          MS. CAMINITI:  Your Honor, I have to say that is very

3   troublesome to the Defendant because --

4          THE COURT:  Which part?  That I'm going to make them

5   do it quickly?

6          MS. CAMINITI:  Your rules provide for no reply.

7          THE COURT:  I understand.

8          MS. CAMINITI:  So in effect they've given us a three-

9   page brief on a short form motion.  And now have just kind of

10  said oh, by the way, do you mind if we submit a brief.  That's

11  just -- that's bad.

12         THE COURT:  Well, here's the thing, counsel, you're

13  going to come -- I assume you saw their notice, right?

14         MS. CAMINITI:  Yes.

15         THE COURT:  And you're going to bring 15 issues to

16  their attention.  And they're going to agree on 11 of them,

17  right?  So you're going to say there's four things left.  I

18  don't know what their position is on why those four things

19  matter to them.  So I think a very, very short reply, a page or

20  two.

21         MS. CAMINITI:  Just as to the issue of notice.

22         THE COURT:  Just on the issue.  Yeah.

23         MS. CAMINITI:  Only on the issue of notice, not --

24         THE COURT:  Right. On the issue of what's in the

25  notice that you don't like that they do like and why they think

*Antonella Calabrese et al v. TD Bank, N.A. - 9/3/13*        44

1   it's important.

2           MS. CAMINITI:  Okay.  So the subject of reply is only

3   the content of the notice.

4           THE COURT:  Of the notice.  Exactly.

5           MS. CAMINITI:  Understood.

6           THE COURT:  Exactly.  And I'm also optimistic that

7   you're going work out all the issues.  There are going to be no

8   issues on what the notice would say should a notice go out.  And

9   you've got a big incentive there, because that will give you

10  more space to convince me that it shouldn't go out at all.

11          MS. CAMINITI:  And I would also be optimistic that we

12  would be able to work out the contents.

13          THE COURT:  And that may even go to like some of the

14  issues you mentioned with buying the acquisitions Commerce Bank,

15  we're going to exclude these folks or indicate that some folks

16  may not -- if they -- they wouldn't be included.  I mean

17  whatever issues you can work out.  And again, I invite you to

18  use the witnesses room; stay as long as you want.  I've got

19  nothing going on today.  All right?

20          MS. CAMINITI:  Thank you very much, Your Honor.

21          MR. SWARTZ:  Okay.

22          THE COURT:  Anything else?

23          MR. SWARTZ:  Not from us, Your Honor.

24          THE COURT:  All right.  Good seeing all of you.  Thank

25  you for your presentations.

*Antonella Calabrese et al v. TD Bank, N.A. - 9/3/13*        45

1          MS. CAMINITI:  Thank you.

2          THE COURT:  Oh, actually, before we get off the record

3  a little preliminary.  So I'm just going to leave this out in

4  this format.  The other reason these cases are referred to me

5  other than managing discovery and these sorts of issues, is

6  settlement and resolution, something I like to get involved in.

7  Right now, we don't even know the contours of the case.  We

8  don't know what's involved.  So I'm going to leave it to you all

9  to request, if you think it would be helpful, my intervention on

10 a settlement conference.  And if you get in touch with Lauren,

11 she'll set you up for a day.  You'll bring some clients in; some

12 client representatives.  You can look at my rules as to how I do

13 this, and we'll sit down and we'll try to work it out.  And I'm

14 happy to do it.

15         And please member that asking to have a discussion is

16 not a sign of weakness, but it's a reasonable effort to try to

17 resolve the case, which we can try to do earlier rather than

18 later to save everybody a lot of money.  All right?

19         MS. CAMINITI:  Thank you very much, Your Honor.

20         THE COURT:  Okay.

21         MR. SWARTZ:  Thank you, Your Honor.

22                         - o0o -

23

24

25

1                          CERTIFICATION

2

3          I, Rochelle V. Grant, certify that the foregoing is a

4    correct transcript from the official electronic sound recording

5    of the proceedings in the above-entitled matter.

6

7    Dated:  September 6, 2013

8

9                                   _____

10                                        Rochelle V. Grant

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25