**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

---

MICHAEL PUGLISI, FAINA MILLER,
KATHLEEN HURST, SADIA SYED, and
CLAYTON MILLS, on behalf of themselves and
all others similarly situated,

                           Plaintiffs,

       -against-

TD BANK, N.A.,

                        Defendant.

No. 13 Civ. 637 (GRB)

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR**
**APPROVAL OF ATTORNEYS' FEES AND COSTS**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................ 1

ARGUMENT ................................................................................................................... 2

I.  THE PERCENTAGE METHOD IS THE PREFERRED METHOD FOR
    AWARDING ATTORNEYS' FEES IN COMMON FUND CASES IN THE
    SECOND CIRCUIT............................................................................................... 2

II. The Goldberger Factors Support an Award of One Third of the Settlement Amount........ 5

    A.  Class Counsel's Time and Labor ............................................................. 6

    B.  Magnitude and Complexity of the Litigation........................................... 9

    C.  Risk of Litigation ................................................................................... 12

    D.  Quality of Representation ....................................................................... 16

    E.  Fee in Relation to the Settlement. .......................................................... 19

    F.  Public Policy Considerations ................................................................. 22

III. THE LODESTAR CROSS CHECK FURTHER SUPPORTS AN AWARD TO CLASS
     COUNSEL OF ONE THIRD OF THE SETTLEMENT AMOUNT .............................. 23

    A.  Class Counsel's Lodestar Multiplier Is Within the Reasonable Range
        Routinely Approved by Courts ............................................................... 24

    B.  The Time That Class Counsel Spent on the Litigation is Well-Documented and
        Justified .................................................................................................. 26

    C.  Class Counsel Rates are Reasonable, Market Rates ............................... 26

    D.  Reducing The Requested Fees Solely Because They Would Result in a High
        Multiplier Would Penalize Class Counsel For Achieving a Favorable Outcome
        Too Early ................................................................................................ 28

IV. CLASS COUNSEL ARE ENTITLED TO REIMBURSEMENT OF EXPENSES
    UNDER THE SETTLEMENT AGREEMENT............................................................ 29

CONCLUSION............................................................................................................... 30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.H. Phillips, Inc. v. Walling*,
   324 U.S. 490 (1945)...................................................................................23

*Aboud v. Charles Schwab & Co.*,
   No. 14 Civ. 2712, 2014 WL 5794655 (S.D.N.Y. Nov. 4, 2014) ......................................20, 25

*Alleyne v. Time Moving & Storage Inc.*,
   264 F.R.D. 41 (E.D.N.Y. 2010) ...................................................................21

*Anani v. CVS RX Servs.*,
   788 F. Supp. 2d 55 (E.D.N.Y. 2011) ...........................................................16

*Ansoumana v. Gristede's Operating Corp.*,
   201 F.R.D. 81 (S.D.N.Y. 2001) ...................................................................10

*Aquilino v. Home Depot, U.S.A., Inc.*,
   No. 04 Civ. 4100, 2011 WL 564039 (D.N.J. Feb. 15, 2011)....................................14

*Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*,
   522 F.3d 182 (2d Cir. 2008).........................................................................4, 27

*Asare v. Change Grp. N.Y., Inc.*,
   No. 12 Civ. 3371, 2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013) ............................................5

*Barrentine v. Ark.-Best Freight Sys., Inc.*,
   450 U.S. 728 (1981)....................................................................................9

*Beauperthuy v. 24 Hour Fitness USA, Inc.*,
   772 F. Supp. 2d 1111 (N.D. Cal. 2011) ...........................................................14

*Beckman v. KeyBank, N.A.*,
   293 F.R.D. 467 (S.D.N.Y. 2013) ................................................................. *passim*

*Behzadi v. Int'l Creative Mgmt. Partners, LLC*,
   No. 14 Civ. 4382, 2015 WL 4210906 (S.D.N.Y. July 9, 2015) ...................................11, 22

*Bell v. Citizens Financial Group Inc.*,
   No. 10 Civ. 320 (W.D. Pa.)........................................................................13

*In re Boesky Sec. Litig.*,
   888 F. Supp. 551 (S.D.N.Y. 1995)..............................................................24

*Strougo ex rel. The Brazilian Equity Fund, Inc. v. Bassini*,
 258 F. Supp. 2d 254 (S.D.N.Y. 2003)......................................................................4

*Calvo v. B&R Supermarket, Inc.*,
 63 F.Supp.3d 1369 (S.D. Fla. Oct. 28, 2014) .........................................................15

*Castagna v. Madison Square Garden, L.P.*,
 No. 09 Civ. 10211, 2011 WL 2208614 (S.D.N.Y. June 7, 2011)............................29

*Ceka v. PBM/CMSI Inc.*,
 No. 12 Civ. 1711, 2014 WL 6812127 (S.D.N.Y. Dec. 2, 2014)..............................11

*Chavarria v. N.Y. Airport Serv., LLC*,
 875 F. Supp. 2d 164 (E.D.N.Y. 2012) ......................................................................4

*City of Detroit v. Grinnell Corp.*,
 495 F.2d 448 (2d Cir. 1974)....................................................................................12

*Clark v. Ecolab Inc.*,
 Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198 (S.D.N.Y.
 May 11, 2010)..............................................................................................10, 20, 26

*Clem v. Keybank, N.A.*,
 No. 13 Civ. 789, 2014 WL 2895918 (S.D.N.Y. June 20, 2014)........................17, 20

*Comcast Corp. v. Behrend*,
 133 S. Ct. 1426 (2013).............................................................................................13

*In re Comverse Tech., Inc. Sec. Litig.*,
 No. 06 Civ. 1825, 2010 WL 2653354 (E.D.N.Y. June 24, 2010)............................20

*Cruz v. Lawson Software, Inc.*,
 764 F. Supp. 2d 1050 (D. Minn. 2011)....................................................................14

*Cuevas v. Citizens Fin. Grp.*,
 283 F.R.D. 95 (E.D.N.Y. 2012) ...............................................................................18

*Cuevas v. Citizens Fin. Grp., Inc.*,
 526 F. App'x 19 (2d Cir. May 29, 2013) ..................................................................14

*Davis v. J.P. Morgan Chase & Co.*,
 827 F. Supp. 2d 172 (W.D.N.Y. 2011).................................................................20, 25

*Deposit Guar. Nat'l Bank v. Roper*,
 445 U.S. 326 (1980)..................................................................................................23

*Diaz v. E. Locating Serv.*,
 No. 10 Civ. 4082, 2010 WL 5507912 (S.D.N.Y. Nov. 29, 2010) .......................22, 29

*Donovan v. Burger King Corp.*,
672 F.2d 221 (1st Cir. 1982)...............................................15

*In re Family Dollar FLSA Litig.*,
637 F.3d 508 (4th Cir. 2011) ...............................................15

*Flores v. Mama Lombardi's of Holbrook, Inc.*,
12 Civ. 3532, 2015 WL 2374515 (E.D.N.Y. May 18, 2015) .......................... *passim*

*Frank v. Eastman Kodak Co.*,
228 F.R.D. 174 (W.D.N.Y. 2005)...............................................10, 19, 23

*Franklin v. Breton Int'l, Inc.*,
No. 06 Civ. 4877, 2006 WL 3591949 (S.D.N.Y. Dec. 11, 2006)...........................15

*Fujiwara v. Sushi Yasuda Ltd.*,
No. 12 Civ. 8742, 2014 WL 5840700 (S.D.N.Y. Nov. 12, 2014) ....................10, 11

*Garcia v. Pancho Villa's of Huntington Village*,
09 Civ. 486, 2012 WL 5305694 (E.D.N.Y. Oct. 4, 2012) ..........................18

*Gardner v. Western Beef Props.*,
No. 07 Civ. 2345, 2013 WL 1629299 (E.D.N.Y. Mar. 25, 2013) ..........................14

*Gellhaus v. Wal-Mart Stores, Inc.*,
769 F. Supp. 2d 1071 (E.D. Tex. 2011)...............................................15

*In re Gilat Satellite Networks, Ltd.*,
No. 02 Civ. 1510, 2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007)...........................19

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ...............................................5

*Gold v. New York Life Ins. Co.*,
No. 09 Civ. 3210, 2011 WL 2421281 (S.D.N.Y. May 19, 2011)...........................15

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000)............................................... *passim*

*Gunter v. Ridgewood Energy Corp.*,
223 F.3d 190 (3d Cir. 2000)...............................................28, 29

*Havey v. Homebound Mortg., Inc.*,
547 F.3d 158 (2d Cir. 2008)...............................................16

*Hernandez v. Immortal Rise, Inc.*,
306 F.R.D. 91 (E.D.N.Y. 2015)...............................................2

*Hernandez v. Merrill Lynch & Co., Inc.*,
  No. 11 Civ. 8472, 2013 WL 1209563 (S.D.N.Y. March 21, 2013)........................................20

*Hicks v. Stanley*,
  No. 01 Civ. 10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ....................................21, 24

*In re Indep. Energy Holdings PLC Sec. Litig.*,
  302 F. Supp. 2d 180 (S.D.N.Y. 2003)........................................................................................29

*In re Interpublic Sec. Litig.*,
  No. 02 Civ. 6527, 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) ..................................4, 5, 29

*Johnson v. Brennan*,
  No. 10 Civ. 4712, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ............................................5

*Imbeault v. Rick's Cabaret Int'l Inc.*,
  No. 08 Civ. 5458, 2009 WL 2482134, at *2 (S.D.N.Y. Aug. 13, 2009) ...............................27

*Khait v. Whirlpool Corp.*,
  No. 06 Civ. 6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010).......................................20, 23

*Knispel v. Chrysler Grp. LLC*,
  No. 11 Civ. 11886, 2012 WL 55372 (E.D. Mich. Feb. 21, 2012) ..........................................15

*Krumholz v. Vill. of Northport*,
  873 F. Supp. 2d 481 (E.D.N.Y. 2012) .....................................................................................16

*Marlo v. United Parcel Serv., Inc.*,
  639 F.3d 942 (9th Cir. 2011) ...................................................................................................13

*Masters, v. Wilhelmina Model Agency, Inc.*,
  473 F.3d 423 (2d Cir. 2007).....................................................................................................21

*McDaniel v. Cnty. of Schenectady*,
  595 F.3d 411 (2d Cir. 2010).......................................................................................................2

*Munir v. Sunny's Limousine Serv., Inc.*,
  No. 13 Civ. 1581, slip op. (S.D.N.Y. Jan. 8, 2015) ................................................................11

*Myers v Hertz Corp.*,
  624 F.3d 537 (2d Cir. 2010).....................................................................................................13

*Owopetu v. Nationwide CATV Auditing Servs., Inc.*,
  No. 10 Civ. 18, 2011 WL 4433159 (D. Vt. Sept. 21, 2011)....................................................16

*Palacio v. E*TRADE Fin. Corp.*,
  No. 10 Civ. 4030, 2012 WL 1058409 (S.D.N.Y. Mar. 12, 2012) ..........................................17

*Parker v. Jekyll & Hyde Entm't Holdings, LLC*,
　　No. 08 Civ. 7670, 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010) ...........................................9, 24

*Perez v. Allstate Ins. Co.*,
　　No. 11 Civ. 1812, 2014 WL 4635745 (E.D.N.Y. Sept. 16, 2014)..........................................17

*Phillips v. Tacala, LLC*,
　　883 F. Supp. 2d 1138 (N.D. Ala. 2012) ..............................................................................15

*In re Polaroid*,
　　No. 03 Civ. 8335, 2007 WL 2116398 (S.D.N.Y. July 19, 2007) ........................................3, 4

*Ramos v. Baldor Specialty Foods, Inc.*,
　　No. 10 Civ. 6271, 2011 WL 2565330 (S.D.N.Y. June 16, 2011)..........................................15

*In re Ramp Corp. Sec. Litig.*,
　　No. 05 Civ. 6521, 2008 WL 58938 (S.D.N.Y. Jan. 3, 2008)...........................................3, 4, 5

*RBS Citizens, N.A. v. Ross*,
　　133 S. Ct. 1722 (2013) .......................................................................................................14

*Sand v. Greenberg*,
　　No. 08 Civ. 7840, 2010 WL 69359 (S.D.N.Y. Jan. 7, 2010)...........................................2, 23

*Savoie v. Merch. Bank*,
　　166 F.3d 456 (2d Cir. 1999).................................................................................................4

*Scott v. SSP Am., Inc.*,
　　No. 09 Civ. 4399, 2011 WL 1204406 (E.D.N.Y. Mar. 29, 2011) ......................................16

*Severin v. Pasha's Rests., Inc.*,
　　No. 04 Civ. 21765, 2007 WL 967021 (S.D. Fla. Mar. 22, 2007) ........................................15

*Sewell v. Bovis Lend Lease, Inc.*,
　　No. 09 Civ. 6548, 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012)..........................................25

*Smith v. Frac Tech Servs., LLC*,
　　No. 09 Civ. 679, 2011 WL 96868 (E.D. Ark. Jan. 11, 2011) ..............................................14

*Steiner v. Am. Broad. Co.*,
　　248 F. App'x 780 (9th Cir. 2007) ........................................................................................25

*Stevens v. HMSHost Corp.*,
　　No. 10 Civ. 3571, 2014 WL 4261410 (E.D.N.Y. Aug. 27, 2014) ........................................14

*Sukhnandan v. Royal Health Care of Long Island LLC*,
　　No. 12 Civ. 4216, 2014 WL 3778173 (S.D.N.Y. July 31, 2014) ...............................2, 3, 9, 17

*In re Sumitomo Copper Litig.*,
    74 F. Supp. 2d 393 (S.D.N.Y. 1999).................................................................3, 22

*Taft v. Ackermans*,
    No. 02 Civ. 7951, 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007)......................................16, 21

*Tiro v. Pub. House Invs., LLC*,
    No. 11 Civ. 7679, 2013 WL 4830949 (S.D.N.Y. Sept. 10, 2013) ...........................................8

*Tomney v. Int'l Ctr. for the Disabled*,
    357 F. Supp. 2d 721 (S.D.N.Y. 2005)...................................................................................16

*Varljen v. H.J. Meyers & Co., Inc.*,
    No. 97 Civ. 6742, 2000 WL 1683656 (S.D.N.Y. Nov. 8, 2000) .............................................5

*In re Veeco Instruments Inc. Sec. Litig.*,
    No. 05 Civ. 1695, 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ..........................................21

*Velez v. Majik Cleaning Serv., Inc.*,
    No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007)..................................3, 4, 19

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ............................................................................................25

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)......................................................................................2, 3, 4, 28

*Willix v. Healthfirst, Inc.*,
    No. 07 Civ. 1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011).............................................20

*Wong v. HSBC Mortg. Corp. (USA)*,
    No. 07 Civ. 2446, 2010 WL 3833952 (N.D. Cal. Sept. 29, 2010).........................................14

*Yesmin v. Rite Aid of N.Y., Inc.*,
    No. 10 Civ. 4157, 2012 WL 3871735 (E.D.N.Y. Sept. 6, 2012)...........................................16

*Young v. Tri Cnty. Sec. Agency, Inc.*,
    No. 13 Civ. 5971, 2014 WL 1806881 (E.D. Pa. May 7, 2014) .............................................18

*Yuzary v. HSBC Bank USA, N.A.*,
    No. 12 Civ. 3693, 2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) ................................17, 20, 25

*Zeltser v. Merrill Lynch & Co., Inc.*,
    No. 13 Civ. 1531, 2014 WL 4816134 (S.D.N.Y. Sept. 23, 2014)......................................20, 25

*Zivali v. AT&T Mobility, LLC*,
    784 F. Supp. 2d 456 (S.D.N.Y. 2011)...................................................................................13

**Rules and Regulations**

29 U.S.C. § 216(b) ................................................................................................7, 9

29 C.F.R. § 541.106 ................................................................................................15

## INTRODUCTION

In connection with Plaintiffs' Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of FLSA Settlement ("Motion for Final Approval"), filed simultaneously with this motion,[1] Class Counsel, Outten & Golden LLP ("O&G") the Shavitz Law Group, P.A. ("Shavitz Law Group"), Shulman Kessler LLP ("Shulman Kessler") and Winebrake & Santillo, LLC ("Winebrake & Santillo") respectfully move for an award of attorneys' fees in the amount of $3,300,000.00, or one-third of the Maximum Settlement Amount (the "Maximum Settlement Amount"), plus an award of costs in the amount of $41,615.99 reimbursing Class Counsel for out-of-pocket expenses incurred in successfully prosecuting this action.

As of July 14 2015, Class Counsel has spent approximately 1,680 attorney, paralegal, and support staff hours investigating, litigating and settling this litigation.  Decl. of Justin M. Swartz in Support of Plaintiffs' Motion for Final Approval ("Swartz Decl.") ¶ 57; Declaration of Gregg I. Shavitz ("Shavitz Decl.) ¶ 19; Declaration of Troy Kessler ("Kessler Decl.") ¶ 18; Declaration of Peter Winebrake (Winebrake Decl.) ¶ 22.  This includes time spent drafting the complaint and amended complaints, reviewing documents, interviewing Named Plaintiffs, Opt-In Plaintiffs, and other Class Members, negotiating with Defendant to reach a settlement, and responding to class member calls about the settlement.  Swartz Decl. ¶ 57.  Multiplying these hours by the hourly rate of each attorney, paralegal, and staff member results in a lodestar amount of approximately $678,432.00.  Swartz Decl. ¶ 60.

Class Counsel's efforts to date have been without compensation, and their entitlement to

---

[1]     For a detailed account of the factual and procedural background of this case, Class Counsel refers the Court to the Memorandum of Law in Support of Plaintiffs' Motion for Final Approval.  Unless otherwise indicated, all capitalized terms are defined as set forth in the Settlement Agreement.

payment has been wholly contingent upon the result achieved.  Swartz Decl. ¶ 66.  For the reasons set forth below, Class Counsel respectfully submit that the attorneys' fees and expense reimbursements they seek are fair and reasonable under the applicable legal standards, and should be awarded in light of the contingency risk undertaken and the result achieved.

## ARGUMENT

I.   **THE PERCENTAGE METHOD IS THE PREFERRED METHOD FOR AWARDING ATTORNEYS' FEES IN COMMON FUND CASES IN THE SECOND CIRCUIT.**

In wage-and-hour class action lawsuits, public policy favors a common fund attorneys' fee award.  *See, e.g.*, *Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 102 (E.D.N.Y. 2015); *Sukhnandan v. Royal Health Care of Long Island LLC*, No. 12 Civ. 4216, 2014 WL 3778173, at *9 (S.D.N.Y. July 31, 2014); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 477 (S.D.N.Y. 2013); *accord*. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005).  "Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by private attorneys general, attorneys who fill . . . [that] role must be adequately compensated for their efforts."  *Beckman*, 293 F.R.D. at 477 (citations and internal quotation marks omitted); *Sand v. Greenberg*, No. 08 Civ. 7840, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010) ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected.").

There are two ways to compensate attorneys for successful prosecution of statutory claims – the lodestar method and the percentage of the fund method.  *See McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010).  The trend in this Circuit is to use the percentage-of-the-fund method in common fund cases like this one.  *See, e.g.*, *id.*; *Wal-Mart Stores*, 396 F.3d at 121; *Hernandez*, 306 F.R.D. at 102; *Sukhnandan*, 2014 WL 3778173, at *9.

This Court's decision in *Flores v. Mama Lombardi's of Holbrook, Inc.*, 12 Civ. 3532,

2015 WL 2374515 (E.D.N.Y. May 18, 2015) (Brown, Mag.), is one such case that rejected a percentage of the fund attorney's fee calculation.  In *Flores*, the Court denied plaintiff's counsels request for an award based on the percentage of the fund approach for primarily four reasons: (1) there were serious questions about the quality of plaintiff's counsel's representation; (2) plaintiff's counsel did not submit proper billing records; (3) plaintiff's counsel misstated the law; and (4) the settlement agreement provided for attorney's fees representing one-third of the fund, despite the fact that only 15% of class members decided to participate.  *Flores*, 2015 WL 2374515, at *1, 13.  In reaching this conclusion, the Court stated that, "[o]n balance, ***in this case*** . . . [b]ased on the consideration  . . . of the ***peculiar facts of this case***, the undersigned employs the lodestar method in calculating the fee award."  *Id*. at 13-14 (emphasis added).   However, as set forth in Sections II and III below, none of the "peculiar facts" in *Flores* are present here.

Moreover, there are several general reasons that courts prefer the percentage method. First, the percentage method "directly aligns the interests of the class and its counsel [because it] provides a powerful incentive" to attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be made.  *Wal-Mart Stores*, 396 F.3d at 121 (internal quotation marks and citation omitted); *In re Ramp Corp. Sec. Litig.*, No. 05 Civ. 6521, 2008 WL 58938, at *2 n.2 (S.D.N.Y. Jan. 3, 2008) (internal quotation marks and citation omitted); *Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007) (internal quotation marks and citation omitted); *In re Polaroid*, No. 03 Civ. 8335, 2007 WL 2116398, at *2 (S.D.N.Y. July 19, 2007) (internal quotation marks and citation omitted).

The percentage method is also closely aligned with market practices because it "mimics the compensation system actually used by individual clients to compensate their attorneys."  *In*

*re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999); *see also Chavarria v. N.Y. Airport Serv., LLC*, 875 F. Supp. 2d 164, 177 (E.D.N.Y. 2012) ("[T]he percentage method is intended to mirror the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients."); *Strougo ex rel. The Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003).

This rationale is consistent with the Second Circuit's decision in *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, where the Court held that a "presumptively reasonable fee" takes into account what a "reasonable, paying client" would pay.  522 F.3d 182, 191 (2d Cir. 2008).  While *Arbor Hill* is not controlling because it does not address a common fund fee petition, it supports use of the percentage of the fund method.  *Beckman*, 293 F.R.D. at 477 (*Arbor Hill* supported award of one-third of fund).

Second, the percentage-of-the-fund method promotes early resolution, and removes the incentive for plaintiffs' lawyers to engage in wasteful litigation in order to increase their billable hours.  It "provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores*, 396 F.3d at 121 (internal quotation marks and citation omitted); *In re Ramp Corp. Sec. Litig.*, 2008 WL 58938 at *2 n.2 (internal quotation marks and citation omitted); *Velez*, 2007 WL 7232783 at *7 (internal quotation marks and citation omitted); *In re Polaroid*, 2007 WL 2116398 at *2 (internal quotation marks and citation omitted).  The percentage method discourages plaintiffs' lawyers from running up their billable hours, one of the most significant downsides of the lodestar method.  *See Savoie v. Merch. Bank*, 166 F.3d 456, 460-61 (2d Cir. 1999) ("It has been noted that once the fee is set as a percentage of the fund, the plaintiffs' lawyers have no incentive to run up the number of billable hours for which they would be compensated under the lodestar method.") (citation omitted); *Karpus v. Borelli* ("*In re*

4

*Interpublic Sec. Litig.*"), Nos. 02 Civ. 6527, 03 Civ. 1194, 2004 WL 2397190, at *11 (S.D.N.Y. Oct. 26, 2004) (the percentage method is "much simpler").

Third, the percentage method preserves judicial resources because it "relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions." *Asare v. Change Grp. N.Y., Inc.*, No. 12 Civ. 3371, 2013 WL 6144764, at *17 (S.D.N.Y. Nov. 18, 2013) (quoting *Savoie*, 166 F.3d at 461 n.4). "[T]he primary source of dissatisfaction [with the lodestar method] was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 48-49 (2d Cir. 2000) (citation omitted); *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 4357376, at *15 (S.D.N.Y. Sept. 16, 2011); *see also In re Ramp Corp. Sec. Litig.*, 2008 WL 58938 at *2 n.2 (citation omitted). While courts still use the lodestar method as a "cross check" when applying the percentage-of-the-fund method, they are not required to scrutinize the fee records as rigorously. *Goldberger*, 209 F.3d at 50; *see In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) (using an "implied lodestar" for the lodestar cross check); *Varljen v. H.J. Meyers & Co., Inc.*, No. 97 Civ. 6742, 2000 WL 1683656, at *5 (S.D.N.Y. Nov. 8, 2000) (using an "unexamined lodestar figure" for the lodestar cross check).

## II. The *Goldberger* Factors Support an Award of One Third of the Settlement Amount.

Reasonableness is the touchstone for determining attorneys' fees. In *Goldberger*, the Second Circuit articulated six factors for courts to consider in determining the reasonableness of fee applications:

(1)    the time and labor expended by counsel;
(2)    the magnitude and complexities of the litigation;
(3)    the risk of litigation;
(4)    the quality of representation;
(5)    the requested fee in relation to the settlement; and
(6)    public policy considerations.

209 F.3d at 50 (internal quotation marks, citation and ellipsis omitted).  All of the *Goldberger* factors weigh in favor of granting approval of Class Counsel's fee application.

### A.  <u>Class Counsel's Time and Labor</u>

Class Counsel spent significant effort to achieve the $9,900,000 settlement.  Before the initiation of this action, Class Counsel conducted a thorough investigation into the merits of the potential claims and defenses.  Swartz Decl. ¶ 17.  Class Counsel focused their investigation and legal research on the underlying merits of Class Members' claims, the damages to which they were entitled, and the propriety of class certification.  *Id.*  Class Counsel conducted in-depth interviews with numerous Plaintiffs and other witnesses to determine the hours that they worked, the wages they were paid, the nature of their duties and responsibilities, and other information relevant to their claims.  Swartz Decl. ¶ 18.  Class Counsel conducted in-depth background research on TD Bank, including reviewing SEC filings and other public documents, to obtain information on TD Bank's corporate structure and facilities. Swartz Decl. ¶ 19.  Class Counsel also obtained numerous job postings for the ASM position from across the country to determine the nature of the duties and responsibilities of the position.  *Id.*  Class Counsel also obtained investigation reports and other documents about TD Bank's labor practices from the U.S. Department of Labor through a Freedom of Information Act request.  *Id.*

On February 4, 2013, Plaintiffs filed a Class Action Complaint against Defendant in the United States District Court for the Eastern District of New York on behalf of themselves and others similarly situated alleging that Defendant violated the FLSA and the wage and hour laws of New York, Connecticut, and Pennsylvania by improperly classifying ASMs as exempt from federal and state overtime requirements.  The complaint sought recovery of overtime wages, attorneys' fees and costs, interest, and liquidated damages.  Swartz Decl. ¶ 20.  On June 13, 2013, Plaintiffs filed an Amended Complaint asserting additional state claims under New Jersey

and Maryland state laws.  *Id.* ¶ 21.   On January 24, 2014 Plaintiffs filed a Second Amended

Complaint removing previously pled causes of action under Maryland and Connecticut state

laws.  *Id.* ¶ 23.

On August 28, 2013, Plaintiffs filed their Motion for Conditional Certification and Court

Authorized Notice Pursuant to Section 216(b) of the FLSA ("216(b) Motion").  *Id.* ¶ 22.  On

February 25, 2014, the Court issued an Order granting Plaintiffs' 216(b) Motion.  *Id.* ¶ 24.

Before notice was sent to the putative collective pursuant to Section 216(b), the Parties jointly

requested a stay of the action to explore settlement discussions.  *Id.* ¶ 25.

After filing the complaint, the Parties exchanged initial discovery requests and responses,

and TD Bank deposed two of the Named Plaintiffs and two of the Opt-In Plaintiffs.  *Id.* ¶ 26.

Plaintiffs also served on TD Bank a notice of deposition pursuant to Federal Rule of Civil

Procedure 30(b)(6).  *Id.*  The Named Plaintiffs and Opt-In Plaintiffs responded to document

requests and interrogatories, and produced documents related to their employment with TD

Bank. *Id.* ¶ 27.  Defendant produced almost 8,000 pages of documents to Plaintiffs, including

job descriptions for the ASM positions and various corporate documents discussing the ASM

position, its creation, and the duties and responsibilities of the position.  *Id.* ¶ 28.

On or about April 8, 2014, the Parties agreed to mediate this case and entered into a

tolling agreement to explore a possible resolution of Plaintiffs' claims.  Swartz Decl. ¶ 29.  Class

Counsel obtained documents and data from Defendant that helped to assist in the analysis of

hours worked.  Defendant produced data showing the number of Class Members in the ASM job

title, salaries, incentive pay, weeks worked, and location of employment.  Plaintiffs retained an

economic expert to analyze this data and constructed a damages model based on the data.  *Id.* ¶

30.

On May 7, 2014 the Parties attended a full-day mediation session in New York with Hunter Hughes, Esq., a well-known and experienced mediator in complex wage and hour law. At the mediation, the Parties reached an agreement on the settlement amount and other key terms.  During the next several months, the Parties negotiated the remaining terms of the settlement, which were memorialized in a formal Joint Stipulation of Settlement and Release ("Settlement Agreement") executed by the Parties on or about August 19, 2014.  *Id.* ¶ 31.

In performing these and other tasks, Class Counsel has expended approximately 1,680 hours of attorney, paralegal, and staff member time – an aggregate lodestar of $678,432.00..  *Id.* ¶ 57; Shavitz Decl. ¶ 19; Kessler Decl. ¶ 18; Winebrake Decl. ¶ 22.  These hours are reasonable for a case like this one and were compiled from contemporaneous time records maintained by each attorney, paralegal, and support staff participating in the case.  Swartz Decl. ¶ 59; Shavitz Decl. ¶ 22; Kessler Decl. ¶ 18; Winebrake Decl. ¶ 20.  Class Counsel used a small team of attorneys at any one time in order to minimize duplication of efforts and maximize billing judgment and made every effort to have the work performed by the attorney or paralegal with the lowest hourly rate who was able to effectively perform it effectively.  Swartz Decl. ¶ 58; Shavitz Decl. ¶ 21; Kessler Decl. ¶ 19.

Moreover, the requested fee is not based solely on time and effort already expended; rather, it is also meant to compensate Class Counsel for time that will be spent administering the settlement in the future.  Swartz Decl. ¶ 65; *see Beckman*, 293 F.R.D. at 482 ("Class Counsel is often called upon to perform work after the final approval hearing, including answering class member questions, answering questions from the claims administrator, and negotiating and sometimes litigating disagreements with defendants about administering the settlement and distributing the fund"); *see also Tiro v. Pub. House Invs., LLC*, No. 11 Civ. 7679, 2013 WL

4830949, at *13 (S.D.N.Y. Sept. 10, 2013) (fee award is also meant to compensate Class

Counsel for future settlement administration); *Parker v. Jekyll & Hyde Entm't Holdings, LLC*,

No. 08 Civ. 7670, 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010) ("[A]s class counsel is likely

to expend significant effort in the future implementing the complex procedure agreed upon for

collecting and distributing the settlement funds, the multiplier will diminish over time.").  In

Class Counsel's experience, administering class settlements of this nature and size requires a

substantial and ongoing commitment.  Swartz Decl. ¶ 65.  For example, since the Notices were

mailed out, Class Counsel has responded to numerous Class Members' questions about the terms

of the settlement and the amount of their settlement awards.  *Id.*  As is common in wage and hour

class actions, Class Counsel expects to respond to more Class Member inquiries after final

approval, especially after checks are issued.  *Id.*

### B. <u>Magnitude and Complexity of the Litigation.</u>

The size and difficulty of the issues in a case are significant factors to be considered in

making a fee award.  *See Goldberger*, 209 F.3d at 50.  Wage-and-hour cases, especially

nationwide misclassification cases like this one, often involve complex legal issues.  "FLSA

claims typically involve complex mixed questions of fact and law . . . These statutory questions

must be resolved in light of volumes of legislative history and over four decades of legal

interpretation and administrative rulings."  *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S.

728, 743 (1981).

"Among FLSA cases, the most complex type is the 'hybrid' action brought here, where

state wage and hour violations are brought as an 'opt out' class action pursuant to Rule 23 in the

same action as the FLSA 'opt in' collective action pursuant to 29 U.S.C. § 216(b)."  *Sukhnandan*,

2014 WL 3778173, at *10.  "Justice is served and consistency and efficiency are achieved by

having the litigation in one forum because the same set of operative facts are being applied and

analyzed under both statutory frameworks." *Beckman*, 293 F.R.D. at 479 (referencing *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 89 (S.D.N.Y. 2001)).

This case hinged on several mixed questions of fact and law.  In particular, the Parties disputed the facts surrounding the job duties of employees in ASM positions whom Plaintiffs alleged were misclassified under the FLSA and state law.  These unresolved factual and legal questions support approval of Class Counsel's attorneys' fee request.  *See id.* (size and difficulty of case, including mixed questions of fact and law, supported attorneys' fee award of one third of the fund); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 189 (W.D.N.Y. 2005) (mixed questions of fact and law supported court's award of attorneys' fees representing approximately 40% of the common fund).  This added complexity also supports the fee request.  *See Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198, at *4-8 (S.D.N.Y. May 11, 2010) (approving settlement and award of attorneys' fees representing one third of the fund in wage and hour class and collective action involving multiple job titles).

This case differs markedly from *Flores* and the kinds of wage and hour cases described by Judge Pauley in *Fujiwara v. Sushi Yasuda Ltd.*, No. 12 Civ. 8742, 2014 WL 5840700 (S.D.N.Y. Nov. 12, 2014) ("*Fujiwara*").  To the extent that the court in *Fujiwara* paints all wage and hour cases with the same brush, *see id.* at *4 ("[w]age and hour cases are not unduly complex"), Plaintiffs respectfully disagree.  Some wage and hour matters are much more complicated and risky than others.

Unlike in *Fujiwara*, where "obligations under the FLSA and NYLL are relatively clear and liability turns on factual issues," *id.* at *7, here, where Defendants contend that their compensation policies were lawful, including that Plaintiffs and Class Members were subject to the administrative, executive, and/or combination exemptions to the FLSA, and the

corresponding exemptions under applicable state laws, class certification and liability were far from clear and would have required thousands of hours of attorney time and tens of thousands of dollars in costs to establish.  In addition, Plaintiffs would have had to overcome Defendants' likely argument that the differences among various job positions and worksites and other individualized questions preclude class certification.  In *Fujiwara*, on the other hand, the court noted that "it would likely not have been difficult to certify a class of employees working the same positions as the Class Representatives at a single restaurant location."  2014 WL 5840700 at *7.

Since *Fujiwara*, other judges in this circuit have continued to follow the common practice of awarding a third of a settlement fund or more in wage and hour actions where settlement is reached relatively early in the litigation, especially in complex legal and factual cases where liability and class certification are far from assured.  *See, e.g.*, *Behzadi v. Int'l Creative Mgmt. Partners, LLC*, No. 14 Civ. 4382, 2015 WL 4210906, at *2-3 (S.D.N.Y. July 9, 2015) (approving attorneys' fees award of one-third of the fund in case brought on behalf of unpaid interns); *Munir v. Sunny's Limousine Serv., Inc.*, No. 13 Civ. 1581, slip op. at 3 (S.D.N.Y. Jan. 8, 2015) (attached to the Swartz Decl. as Ex. F) (awarding attorneys' fees award of $1,166,666.67, equaling one-third of the settlement fund, in case brought on behalf of drivers misclassified as independent contractors); Swartz Decl. Ex. G ((Hr'g Tr. 16-17, Dec. 19, 2014, *Amador v. Morgan Stanley & Co., LLC*, No. 11 Civ. 4326 (S.D.N.Y.)) (awarding attorneys' fees of one-third of the fund in nationwide wage and hour off-the-clock case involving $4.2 million fund); *Ceka v. PBM/CMSI Inc.*, No. 12 Civ. 1711, 2014 WL 6812127, at *1 (S.D.N.Y. Dec. 2, 2014) (awarding attorneys of one-third of the settlement fund in wage and hour class action alleging off-the-clock claims).

C.    <u>Risk of Litigation.</u>

The risk of litigation is also an important factor in determining a fee award.  Uncertainty that an ultimate recovery will be obtained is highly relevant in determining the reasonableness of an award.  *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 471 (2d Cir. 1974), *abrogated on other grounds by Goldberger*, 209 F.3d 43.  "[D]espite the most vigorous and competent of efforts, success is never guaranteed."  *Id.* at 471.

The substantial risk of Class Counsel recovering no compensation after years of litigation supports Class Counsel's anticipated fee request.  "Contingency risk is the principal, though not exclusive, factor courts should consider in their determination of attorneys' fees."  *Beckman*, 293 F.R.D. at 479 (quoting *In re Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98 Civ. 4318, 2001 WL 709262, at *6 (S.D.N.Y. June 22, 2001)) (internal quotation marks omitted).

Class Counsel undertook to prosecute this action without any assurance of payment for their services, litigating this case on a wholly contingent basis in the face of significant risk.  Swartz Decl. ¶ 66.  Class and collective wage and hour cases of this type are, by their very nature, complicated and time-consuming.  *Id.*  Any lawyer undertaking representation of large numbers of affected employees in such actions inevitably must be prepared to make a tremendous investment of time, energy, and resources.  *Id.*  Due also to the contingent nature of the customary fee arrangement, lawyers are asked to be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind.  *Id.*  Class Counsel stood to gain nothing in the event the case was unsuccessful.  *Id.*

Moreover, the circumstances of this case presented hurdles to a successful recovery.  Plaintiffs' misclassification claim hinged on their ability to prove that ASMs performed duties that made them eligible for overtime and therefore not exempt under the FLSA and relevant state laws.  Plaintiffs would have to overcome TD Bank's defense that Plaintiffs and Class Members

were subject to the executive and administrative exemptions to the FLSA, and the corresponding exemptions under applicable state laws.  A trial on the merits would involve significant risks for Plaintiffs as to both liability and damages.  For example, in *Bell v. Citizens Financial Group Inc.*, No. 10 Civ. 320 (W.D. Pa.), which involved assistant bank managers similar to TD Bank's ASMs who also alleged that they were misclassified, the jury returned a defense verdict.  *Bell v. Citizens Fin. Grp., Inc.*, No. 10 Civ. 320 (W.D. Pa.).

Furthermore, when taking on this case, Class Counsel faced the risk that the Court would not grant class certification under Rule 23, and such a determination would likely be reached only after extensive briefing.  Defendant would likely have argued, in its opposition to class certification and on a decertification motion, that individual questions preclude certification because differences among various job positions and branches and other individualized questions preclude class certification.  Although Plaintiffs disagree with these arguments, defendants have prevailed on arguments like these.  *See Beckman*, 293 F.R.D. at 480 (listing numerous cases in the Southern District of New York where courts have denied Rule 23 motions and decertified FLSA collectives in misclassification cases); *see also Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 949 (9th Cir. 2011) (affirming decertification, citing "variations in job duties that appear to be a product of employees working at different facilities, under different managers, and with different customer bases" (quoting *Marlo v. United Parcel Serv., Inc.*, 251 F.R.D. 476, 486 (C.D. Cal. 2008) (internal quotation marks omitted)); *Myers v Hertz Corp.*, 624 F.3d 537, 549-51 (2d Cir. 2010) (affirming denial of class certification in misclassification case based on evidence that class members' duties varied by location); *Zivali v. AT&T Mobility, LLC*, 784 F. Supp. 2d 456, 470 (S.D.N.Y. 2011) (granting defendant's motion to decertify a FLSA collective action). In fact, following the Supreme Court's decision in *Comcast Corp. v. Behrend*, 133 S. Ct. 1426

(2013), courts have vacated decisions certifying classes of employees in similar job titles.  *See Cuevas v. Citizens Fin. Grp., Inc.*, 526 F. App'x 19, 21-22 (2d Cir. May 29, 2013) (vacating and remanding district court's decision certifying a class of assistant bank managers); *RBS Citizens, N.A. v. Ross*, 133 S. Ct. 1722 (2013) (vacating decision affirming certification of class of assistant bank managers).

Two recent executive exemption cases in this Circuit that also involved assistant managers illustrate that cases like this are vulnerable to being decertified.  In *Stevens v. HMSHost Corp.*, No. 10 Civ. 3571, 2014 WL 4261410 (E.D.N.Y. Aug. 27, 2014), the court granted the defendants' motion to decertify a collective of assistant store managers who claimed they were misclassified as exempt executives, based upon variations in the job duties that opt-in plaintiffs performed.  Likewise, in *Gardner v. Western Beef Props.*, No. 07 Civ. 2345, 2013 WL 1629299 (E.D.N.Y. Mar. 25, 2013), *report and recommendation adopted in* 2013 WL 1632657 (E.D.N.Y. Apr. 16, 2013), the court also granted decertification of a collective including department managers and assistant department managers who had brought misclassification claims, where opt-ins' testimony indicating that their managerial duties varied widely.

Outside this Circuit, there are even more numerous examples of courts granting motions to decertify FLSA collectives in misclassification cases.[2]  Cases such as these illustrate the rising

---

[2]     *See, e.g.*, *Beauperthuy v. 24 Hour Fitness USA, Inc.*, 772 F. Supp. 2d 1111 (N.D. Cal. 2011) (decertifying collective of gym employees in misclassification case); *Cruz v. Lawson Software, Inc.*, 764 F. Supp. 2d 1050 (D. Minn. 2011) (decertifying collective of consultants in misclassification case); *Aquilino v. Home Depot, U.S.A., Inc.*, No. 04 Civ. 4100, 2011 WL 564039 (D.N.J. Feb. 15, 2011) (decertifying collective of assistant store managers allegedly misclassified as exempt executives); *Smith v. Frac Tech Servs., LLC*, No. 09 Civ. 679, 2011 WL 96868 (E.D. Ark. Jan. 11, 2011) (decertifying class of salaried employees claiming misclassification under administrative exemption); *Wong v. HSBC Mortg. Corp. (USA)*, No. 07 Civ. 2446, 2010 WL 3833952 (N.D. Cal. Sept. 29, 2010) (decertifying collective of loan officers who claimed misclassification under outside sales exemption).  As one court has noted,

hurdles that plaintiffs in wage and hour cases face in maintaining collective action certification through trial.

Although Class Counsel believes that Plaintiffs would have defeated Defendant's exemption defenses, Class Counsel took this case in the face of a substantial risk of losing on the merits.  Assistant manager plaintiffs face an uphill battle establishing that management was not their primary duty, given that, under the concurrent duties regulation, employees can be performing mostly non-management duties and yet still qualify for the exemption.  *See* 29 C.F.R. § 541.106; *Donovan v. Burger King Corp.*, 672 F.2d 221 (1st Cir. 1982).  Accordingly, numerous courts have granted summary judgment to defendants in executive exemption cases involving assistant managers where they spent substantial time—even the majority of their time—performing non-managerial tasks.[3]  Numerous other overtime claims in misclassification cases have been dismissed on summary judgment in this District alone,[4] as well as elsewhere in this Circuit.[5]

---

"decertification actions are frequently successful."  *Knispel v. Chrysler Grp. LLC*, No. 11 Civ. 11886, 2012 WL 55372 (E.D. Mich. Feb. 21, 2012).

[3]     *See e.g.*, *In re Family Dollar FLSA Litig.*, 637 F.3d 508 (4th Cir. 2011); *Calvo v. B&R Supermarket, Inc.*, 63 F.Supp.3d 1369 (S.D. Fla. Oct. 28, 2014) (finding that assistant store manager was exempt executive even where she spent significant time performing non-exempt work); *Phillips v. Tacala, LLC*, 883 F. Supp. 2d 1138 (N.D. Ala. 2012) (holding that assistant manager at restaurant was exempt executive even though she spent more than half of her time on non-exempt duties); *Gellhaus v. Wal-Mart Stores, Inc.*, 769 F. Supp. 2d 1071 (E.D. Tex. 2011) (holding that assistant manager was exempt executive even though she spent significant time on non-exempt tasks); *Severin v. Pasha's Rests., Inc.*, No. 04 Civ. 21765, 2007 WL 967021 (S.D. Fla. Mar. 22, 2007) (finding shift manager to be exempt executive even though she spent majority of time on non-exempt duties).

[4]     *See, e.g.*, *Ramos v. Baldor Specialty Foods, Inc.*, No. 10 Civ. 6271, 2011 WL 2565330 (S.D.N.Y. June 16, 2011) (executive exemption); *Gold v. New York Life Ins. Co.*, No. 09 Civ. 3210, 2011 WL 2421281 (S.D.N.Y. May 19, 2011) (outside sales exemption); *Franklin v. Breton Int'l, Inc.*, No. 06 Civ. 4877, 2006 WL 3591949 (S.D.N.Y. Dec. 11, 2006) (professional

Class Counsel takes on difficult cases like this one because we believe that they are important.  Swartz Decl. ¶ 67; see also Swartz Decl. Ex. I (Declaration of Wayne N. Outten ("Outten Decl.")) ¶ 12.  Class Counsel takes seriously our responsibility to push the law in a direction favorable for employees.  *Id.*  Class Counsel continues to do so despite, unfortunately, having suffered several major (and very expensive) losses in wage and hour cases over the years.  *Id.* ¶¶ 67-68.  Like this case, we believed that each of these cases was meritorious but understood the risks.  *Id.* ¶ 67.  While Plaintiffs believe that they could ultimately establish both liability and damages, this would require significant factual development.  Class Counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration.

**D.     Quality of Representation.**

"To determine the quality of the representation, courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit."  *Taft v. Ackermans*, No. 02 Civ. 7951, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007) (internal quotation marks and citation omitted).

The recovery obtained was substantial.  Defendant agreed to pay a total of $9,900,000 to settle this litigation.  The settlement represents a substantial recovery for Class Members, particularly in light of the risks of litigation.  Swartz Decl. ¶ 50.  These risks included the risk of

_____

exemption); *Tomney v. Int'l Ctr. for the Disabled*, 357 F. Supp. 2d 721 (S.D.N.Y. 2005) (professional exemption).

[5]     *See, e.g.*, *Havey v. Homebound Mortg., Inc.*, 547 F.3d 158 (2d Cir. 2008); *Yesmin v. Rite Aid of N.Y., Inc.*, No. 10 Civ. 4157, 2012 WL 3871735 (E.D.N.Y. Sept. 6, 2012) (executive exemption); *Krumholz v. Vill. of Northport*, 873 F. Supp. 2d 481 (E.D.N.Y. 2012) (administrative exemption); *Owopetu v. Nationwide CATV Auditing Servs., Inc.*, No. 10 Civ. 18, 2011 WL 4433159 (D. Vt. Sept. 21, 2011) (retail or service exemption); *Scott v. SSP Am., Inc.*, No. 09 Civ. 4399, 2011 WL 1204406 (E.D.N.Y. Mar. 29, 2011) (executive exemption); *Anani v. CVS RX Servs.*, 788 F. Supp. 2d 55 (E.D.N.Y. 2011) (professional exemption).

losing both collective and class certification, having a collective action decertified, losing on the merits, and losing on appeal.

Here, Class Members will each receive an average net settlement payment (net of attorneys' fees and costs, service awards, and claims administration fees) of approximately $2,490.09. Swartz Decl. Ex. B (Peneda-Sibley Decl.) ¶ 7. Approximately 65% of Class Members have submitted claim forms. *Id.* ¶ 20. Weighing the benefits of the settlement against the available evidence and the risks associated with proceeding in the litigation, the settlement amount is reasonable. *Cf. Flores,* 2015 WL 2374515 at *13 n. 9 (only 603 of the 4,123 – approximately 15% – of the total class participated in the settlement).

Class Counsel has significant experience prosecuting large-scale wage and hour class and collective actions. Swartz Decl. ¶ 8 (listing cases); Shavitz Decl. ¶ 6 (same); Kessler Decl. ¶ 7 (same); Winebrake Decl. ¶ 3 (same). Courts have found O&G to be adequate class counsel in numerous employment law class actions. *See, e.g., Perez v. Allstate Ins. Co.*, No. 11 Civ. 1812, 2014 WL 4635745, at *25 (E.D.N.Y. Sept. 16, 2014) (appointing O&G as class counsel); *see also* Swartz Decl. ¶ 8 (collecting cases). Likewise, the Shavitz Law Group has acted as lead counsel or co-counsel on dozens of wage and hour class and collective actions, including *Clem v. Keybank, N.A.*, No. 13 Civ. 789, 2014 WL 2895918, at *5; *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693, 2013 WL 5492998, at *3; *Beckman*, 293 F.R.D. at 473; and *Palacio v. E*TRADE Fin. Corp.*, No. 10 Civ. 4030, 2012 WL 1058409, at *2 (S.D.N.Y. Mar. 12, 2012) (appointing O&G and the Shavitz Law Group as Class Counsel based on their experience in "numerous wage and hour class and collective actions"). Courts have also repeatedly found Shulman Kessler LLP adequate to serve as counsel in wage and hour collective and class actions. *See, e.g., Sukhnandan*, 2014 WL 3778173, at *8 (S.D.N.Y. July 31, 2014) ("The work that [Shulman

17

Kessler LLP] has performed in litigating and settling this case demonstrates their commitment to the class and to representing the class's interests"); *Garcia v. Pancho Villa's of Huntington Village*, 09 Civ. 486, 2012 WL 5305694, at *7 (E.D.N.Y. Oct. 4, 2012) ("Class Counsel, Shulman Kessler LLP, are experienced employment lawyers with substantial experience prosecuting large-scale wage-and-hour class and collective actions."); *accord Morris*, 859 F. Supp. 2d at 616.  Winebrake & Santillo has also repeatedly been recognized as experienced wage and hour class action lawyers.  *See, e.g., Young v. Tri Cnty. Sec. Agency, Inc.*, No. 13 Civ. 5971, 2014 WL 1806881, at *4 (E.D. Pa. May 7, 2014) ("Winebrake & Santillo has particular experience with wage and overtime rights litigation"; noting that the firm "has been involved in dozen of class action lawsuits in this area of law, and the[y] . . . have significant experience and have enjoyed great success in the field."); *Cuevas v. Citizens Fin. Grp.*, 283 F.R.D. 95, 101 (E.D.N.Y. 2012) (recognizing that the Winebrake Law Firm has "been appointed class counsel for dozens of wage and hour claims across the country").  *See also* Swartz Decl. ¶ 8; Shavitz Decl. ¶ 6; Kessler Decl. ¶ 7; Winebrake Decl. ¶ 4.

Unlike in *Flores*, where the Court noted that class counsel engaged in behavior that could "well be viewed as a breach of professional responsibility," 2015 WL 2374515, at *15, and that "[t]he relatively large size of the settlement cannot, in any way, be attributed to 'superior attorney performance,' but [was] rather attributable to fortuity and circumstance," *id.* at *20, here, the Court found that "[t]he work that Plaintiffs' Counsel has performed both in litigating and settling this case demonstrates their skill and commitment to representing the class's interests," *Puglisi v. TD Bank, N.A.*, No. 13 Civ. 637, 2015 WL 574280, at *5 (E.D.N.Y. Feb. 9, 2015).

Class Counsel's skill and experience litigating wage and hour cases were directly

18

responsible for the favorable settlement and weigh in favor of granting the requested fees.

Swartz Decl. ¶ 56; *Velez*, 2007 WL 7232783, at *8 ("Lead Counsel's experience representing

plaintiffs in class actions" supported a 31% contingency fee award); *Frank*, 228 F.R.D. at 189

(citing Class Counsel's experience as one factor supporting an attorneys' fee award of

approximately 40% of the fund).

      **E.**    **Fee in Relation to the Settlement.**

      Courts also consider the size of the settlement to ensure that the percentage awarded does

not constitute a "windfall." *See In re Gilat Satellite Networks, Ltd.*, No. 02 Civ. 1510, 2007 WL

2743675, at *16 n.41 (E.D.N.Y. Sept. 18, 2007). "[T]he percentage used in calculating any

given fee award must follow a sliding-scale and must bear an inverse relationship to the amount

of the settlement." *Beckman*, 293 F.R.D. at 481 (quoting *In re Indep. Energy Holdings PLC Sec.*

*Litig.*, No. 00 Civ. 6689, 2003 WL 22244676, at *6 (S.D.N.Y. Sept. 29, 2003)) (internal

quotation marks omitted). Where the size of the fund is relatively small, courts typically find

that requests for a greater percentage of the fund are reasonable. *See In re Gilat Satellite*

*Networks, Ltd.*, 2007 WL 2743675, at *5, *16 n.41 (finding a 30% fee would not constitute a

windfall "[g]iven the modest size of the [$20 million] settlement"); *see also Beckman*, 293

F.R.D. at 481 (a 33% fee is not a windfall "because the requested amount is consistent with the

norms of class litigation in this circuit" (quoting *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143,

2011 WL 754862, at *6-7 (E.D.N.Y. Feb. 18, 2011) (internal quotation marks omitted)).

      The size of the $9,900,000 settlement weighs in favor of granting the requested fee and

cost award of one-third of the common fund. Courts in this Circuit have routinely granted

requests for one third of the fund in cases with settlement funds similar to or substantially larger

than this one. *See, e.g.*, Swartz Decl. Ex. G (Hr'g Tr. 16-17, Dec. 19, 2014, *Amador v. Morgan*

*Stanley & Co., LLC*, No. 11 Civ. 4326) (awarding attorneys' fees of one-third of the fund in

wage and hour misclassification case involving $4.2 million fund); *Aboud v. Charles Schwab & Co.*, No. 14 Civ. 2712, 2014 WL 5794655, at *5 (S.D.N.Y. Nov. 4, 2014) (granting plaintiffs' request for an attorney fee award of one-third of the $3.8 million fund in wage and hour settlement); *Zeltser v. Merrill Lynch & Co., Inc.*, No. 13 Civ. 1531, 2014 WL 4816134, at *8-9 (S.D.N.Y. Sept. 23, 2014)  (awarding attorneys' fees of one-third of the fund in wage and hour misclassification class action); *Clem*, 2014 WL 2895918, at *1, *9-10 (S.D.N.Y. June 20, 2014) (awarding class counsel 33% fee award in $3,500,000 settlement of wage and hour misclassification class action); *Yuzary*, 2013 WL 5492998, at *1, 9-10 (S.D.N.Y. Oct. 2, 2013) (awarding attorneys' fee totaling 31.7% of $15,625,000 fund in wage and hour settlement); *Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472, 2013 WL 1209563, at *1, *8-10 (S.D.N.Y. March 21, 2013) (awarding 33% of a $7 million settlement in a FLSA and NYLL misclassification case); *Davis  v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 178, 182-87 (W.D.N.Y. 2011) (awarding one third fee in $42 million settlement); *Willix*, 2011 WL 754862, at *1, *6-7  (awarding one third of $7.675 million settlement fund in wage and hour class action); *Clark*, 2010 WL 1948198, at *2, *8-9 (awarding class counsel one third of $6 million settlement fund in wage and hour class action); *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106, at *1, *8-9 (E.D.N.Y. Jan. 20, 2010) (awarding class counsel 33% of $9.25 million settlement fund in FLSA and multi-state wage and hour case).

While courts sometimes apply a "sliding-scale" approach by lowering the percentage awarded in "megafund" cases to prevent a windfall to plaintiffs' attorneys, the $9,900,000 fund in this case does not trigger such an issue.  *See In re Comverse Tech., Inc. Sec. Litig.*, No. 06 Civ. 1825, 2010 WL 2653354, at *1, *3-4 (E.D.N.Y. June 24, 2010) (noting that some courts apply "sliding-scale" approach in megafund cases, but declining to apply it in case involving $225

million settlement); *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 Civ. 1695, 2007 WL 4115808, at *7 (S.D.N.Y. Nov. 7, 2007) ("[A] fee of 30% of the $5.5 million settlement fund is consistent with fees awarded in . . . similar class action settlements of comparable value[,] . . . [and] does not create a windfall."); *Taft*, 2007 WL 414493, at *1, *10 ("Thirty percent of a larger settlement fund could constitute a windfall; however, a settlement fund of [$15.175 million] does not create such an issue."); *Hicks v. Stanley*, No. 01 Civ. 10071, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) ("A settlement amount of $10 million does not raise the windfall issue in the same way as would a $100 million settlement, and a 30% fee does not produce such a windfall."). An award of one third of the Maximum Settlement Amount is reasonable and "consistent with the norms of class litigation in this circuit." *Beckman*, 293 F.R.D. at 477 (quoting *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (internal quotation marks omitted)).

Class Counsel's fee should be calculated as percentage of the full amount of money that the settlement made available to the class. This is the best measure of what Class Counsel accomplished. The Second Circuit is clear that an "allocation of fees by percentage should . . . be awarded on the basis of the total funds made available, whether claimed or not." *Masters*, *v. Wilhelmina Model Agency, Inc.,* 473 F.3d 423, 437 (2d Cir. 2007). "The value of legal service rendered in the creation of a settlement fund [is not] diminished by the failure of beneficiaries to cash in, regardless of what happens to the surplus." *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 59 (E.D.N.Y. 2010); *see also Masters*, 473 F.3d at 437 ("The entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class" and thus fees should be allocated based on "total funds made available, whether claimed or not."); *Behzadi*, 2015 WL 4210906, at *2 (S.D.N.Y. July 9, 2015) (explaining that although

the settlement was claims-made, "meaning the amount paid to the class will depend on the number of claims submitted by the class members," "awarding attorneys' fees based on a percentage of the settlement amount rather than the amount paid [was] proper."); *Diaz v. E. Locating Serv.*, No. 10 Civ. 4082, 2010 WL 5507912, at *8 (S.D.N.Y. Nov. 29, 2010) (finding fee requested reasonable when it was "based on the entire settlement fund, including the amount that will revert to defendants").

As explained above, the *Goldberger* factors govern the percentage-of-the-fund fee award, not the amount claimed by class members.  *See Diaz*, 2010 WL 5507912, at *8 ("[A]lthough the percentage-of-recovery here is based on the entire settlement fund, including the amount that will revert to defendants, rather than on the portion of the fund equal to the claims actually made, the fee requested is nevertheless reasonable in light of the *Goldberger factors.*").  Even considering the amount claimed, a majority of Class Members – approximately 65% – have submitted claim forms.  Swartz Decl. Ex. B (Peneda-Sibley Decl.) ¶ 20; *cf. Flores*, 2015 WL 2374515, at *13 n. 9 (factor weighed in favor of lodestar approach where the requested attorneys' fees represented 182% of the actual payout to class members, only 15% of the class participated in the settlement, and the amount claimed by participants totaled 18% of the maximum common fund).

**F.     Public Policy Considerations.**

Public policy considerations weigh in favor of granting Class Counsel's requested fees. In rendering awards of attorneys' fees, "the Second Circuit and courts in this district also have taken into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation."  *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d at 399.

The FLSA and the NYLL are remedial statutes designed to protect the wages of workers. *See A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945) (recognizing FLSA's objective of

ensuring that every employee receives "a fair day's pay for a fair day's work") (internal

quotation marks omitted).  Adequate compensation for attorneys who protect those rights by

taking on such litigation furthers the remedial purpose of those statutes.  *Khait*, 2010 WL

2025106, at *8 ("Attorneys who fill the private attorney general role must be adequately

compensated for their efforts.  If not, wage and hour abuses would go without remedy because

attorneys would be unwilling to take on the risk."); *Sand*, 2010 WL 69359, at *3 ("But for the

separate provision of legal fees, many violations of the Fair Labor Standards Act would continue

unabated and uncorrected.").

     Courts have recognized that fee awards in cases like this serve the dual purposes of

encouraging "private attorney[s] general" to seek redress for violations and discouraging future

misconduct of a similar nature.  *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39

(1980); *Beckman*, 293 F.R.D. at 477.  An award of attorneys' fees helps to ensure that

"plaintiffs' claims [will] . . . be heard."  *Frank*, 228 F.R.D. at 189.  If courts denied sufficient

attorneys' fees "no attorneys . . . would likely be willing to take on . . . small-scale class actions

[.]"  *Id.*; *see also* Swartz Decl. Ex. G (Hr'g Tr. 16, Dec. 19, 2014, *Amador v. Morgan Stanley &*

*Co., LLC*, No. 11 Civ. 4326) (recognizing that "one-third is not too high for [wage and hour]

cases like this . . . It's important that lawyers have incentives to bring cases like this.").

## III.    THE LODESTAR CROSS CHECK FURTHER SUPPORTS AN AWARD TO CLASS COUNSEL OF ONE THIRD OF THE SETTLEMENT AMOUNT.

     Following *Goldberger*, the trend in the Second Circuit has been to apply the percentage

method and loosely use the lodestar method as a "baseline" or as a "cross check[.]"  *Goldberger*,

209 F.3d at 50.  The Second Circuit "encourage[s] the practice of requiring documentation of

hours as a 'cross check' on the reasonableness of the requested percentage."  *Id.* (citation

omitted); *see also Parker*, 2010 WL 532960, at *2 (endorsing the *Goldberger* "cross check[]").

As part of the cross check, the lodestar is determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate.  *Hicks*, 2005 WL 2757792, at *8.  In calculating the lodestar for cross-check purposes, "the hours documented by counsel need not be exhaustively scrutinized by the district court."  *Goldberger*, 209 F.3d at 50 (citation omitted).  Rather, "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case[.]"  *Id*.

Courts then consider whether a multiplier is warranted based on factors such as: "(i) the contingent nature of the expected compensation for services rendered; (ii) the consequent risk of non-payment viewed as of the time of filing the suit; (iii) the quality of representation; and (iv) the results achieved."  *In re Boesky Sec. Litig.*, 888 F. Supp. 551, 562 (S.D.N.Y. 1995); *see also Parker*, 2010 WL 532960, at *2.

Class Counsel spent over 1,680 hours litigating and settling this matter.  Swartz Decl. ¶ 57; *see also* Shavitz Decl. ¶ 19; Kessler Decl. ¶ 18; Winebrake Decl. ¶ 22.  The time spent by Class Counsel is described in Class Counsel's declarations and summaries of time records.  *See* Swartz Decl. Ex. C (O&G Fee Summary); Shavitz Decl. Ex. A (Shavitz Law Group Fee Summary); Kessler Decl. Ex. 2 (Shulman Kessler Fee Summary); Winebrake Decl. (Winebrake & Santillo Fee Summary).  The hours worked by Class Counsel result in a lodestar of approximately $678,432.00.  Swartz Decl. ¶ 60.  Class Counsel's request for approximately 4.86 times their lodestar is reasonable, particularly in light of the excellent result achieved for the class.

### A.    Class Counsel's Lodestar Multiplier Is Within the Reasonable Range Routinely Approved by Courts.

Class Counsel's request for one third of the Maximum Settlement Amount – $3,300,000 – is approximately 4.86 times "lodestar," which is well within the range of multipliers that courts

have allowed.  Swartz Decl. ¶ 61.  "Courts regularly award lodestar multipliers of up to eight

times the lodestar, and in some cases, even higher multipliers."  *Beckman*, 293 F.R.D. at 481-82

(granting 6.3 multiplier); *see also Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir.

2007) (multiplier of 6.85 "falls well within the range of multipliers that courts have allowed");

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002) (listing nationwide class action

settlements where multiplier ranged up to 19.6 times lodestar); *Aboud*, 2014 WL 5794655, at *5

(multiplier of 4.4); *Zeltser*, 2014 WL 4816134, at *10 (multiplier of 5.1 "falls within the range

granted by courts"); *Yuzary*, 2013 WL 5492998, at *11 (awarding multiplier of 7.6 in wage and

hour misclassification class action);  *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012

WL 1320124, at *13 (S.D.N.Y. Apr. 16, 2012) ("Courts commonly award lodestar multipliers

between two and six."); *Davis*, 827 F. Supp. 2d at 185-86 (awarding multiplier of 5.3 in wage

and hour misclassification class action).[6]

Moreover, "[b]ecause class counsel will be required to spend significant additional time

on this litigation in connection with implementing and monitoring the settlement, the multiplier

will actually be significantly lower because the award includes not only time spent prior to the

award, but after in enforcing the settlement."  *Beckman*, 293 F.R.D. at 482 (internal quotation

marks and citations omitted).  The multiplier that Class Counsel seeks will diminish over time as

Class Counsel spends additional time working on this case, including preparing for and attending

the final fairness hearing, answering class member questions, answering questions from the

claims administrator, and negotiating and possibly litigating disagreements with Defendant about

---

[6]     While many of these orders were attorney-drafted proposed orders, that does not negate
the fact that these court considered and approved of the fee awards.  Many of the courts that
issued these orders questioned counsel vigorously about them at final approval hearings.  *See,
e.g.*, Swartz Decl., Ex. H (*Aboud* Tr.) at 16:10-22 (while noting that fees were high, awarding the
full amount requested based on excellent result achieved for the class).

administering the settlement and distributing the fund.  Swartz Decl. ¶ 65.  In light of the fact

that Class Counsel will likely perform substantial work after the final approval hearing, which

will further reduce the lodestar multiplier, Class Counsel's request is "even more reasonable than

it appears at first glance."  *Beckman*, 293 F.R.D. at 482; *see also Clark*, 2010 WL 1948198 at *9

(holding that fee request supported by fact that that it would compensate class counsel not only

for time and effort expended but also "for time that they will be required to spend administering

the settlement going forward.").

**B.**     **The Time That Class Counsel Spent on the Litigation is Well-Documented
and Justified.**

This case is further distinguished from *Flores* because Class Counsel has documented its

time and used billing judgment.  In *Flores*, the Court denied a request for a fee award of one-

third of the settlement fund where class counsel failed to submit contemporaneous time records

of the date, the hours expended, and the nature of the work done, and included time performed

by a law firm partner that would have been "clearly more appropriately assigned to one of the

paralegals on the case."  *Flores*, 2015 WL 2374515, at *16.   Here, Class Counsel did submit

contemporaneous time records maintained by each attorney, paralegal, and support staff

participating in the case, *see* Swartz Decl. ¶ 59; Shavitz Decl. ¶ 19; Kessler Decl. ¶ 18;

Winebrake Decl. ¶ 21; and minimized duplication of efforts, maximized billing judgment, and

made every effort to have work performed by the attorney or paralegal with the lowest hourly

rate who was able to effectively perform it, *see* Swartz Decl. ¶ 58 and Ex. I (Outten Decl.) ¶ 13;

Shavitz Decl. ¶ 21; Kessler Decl. ¶ 19.

**C.**     **Class Counsel Rates are Reasonable, Market Rates.**

Unlike the plaintiffs' lawyers in *Fujiwara*, counsel in this case has many individual

clients who pay the same hourly rates as those used in the calculation of Class Counsel's

lodestar.  While some of the O&G attorneys who worked on this case did not bill individual, hourly-paying clients during 2014, the rates Class Counsel used for their lodestar calculation are the same rates that other comparable O&G attorneys, typically of the same graduation year, routinely charge to paying clients in employment matters.  *See* Swartz Decl. Ex. I (Outten Decl.) ¶¶ 8-10.

Similarly, Shulman Kessler attorneys also represent individual clients who pay them on an hourly basis.  Kessler Decl. ¶ 22.  The hourly rates paid by Shulman Kessler's individual clients are within the same range as the rates sought here.  *Id.* ¶ 22 and Ex. A (Shulman Kessler Fee Summary).

While Shavitz Law Group and Winebrake & Santillo do not represent individual, hourly-paying clients, their cited rates are nonetheless reasonable.  Mr. Shavitz's, Mr. Stern's, Mr. Meireles's, and Ms. Duignan's rates, as well as Mr. Winebrake's and Mr. Santillos's rates, are all lower than what O&G attorneys of similar tenure and position charge to their individual, hourly-paying clients.  *See* Swartz Decl. Ex. I (Outten Decl.) ¶ 6.  In addition, out of district lawyers should be paid in-district rates.  In *Imbeault v. Rick's Cabaret Int'l Inc.*, a wage and hour case, Judge Lynch applied the "forum rule" set forth in *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, 522 F.3d 182 (2d Cir. 2008), to award fees to Minnesota attorneys rates equivalent to those charged by wage and hour attorneys in Manhattan.  *See Imbeault*, No. 08 Civ. 5458, 2009 WL 2482134, at *2 (S.D.N.Y. Aug. 13, 2009) ("Although the rule was designed to curtail excessive fee awards in cases litigated by big city lawyers in small communities, [] there is no suggestion that the rule is any less applicable in the converse situation presented here.").

**D.      Reducing The Requested Fees Solely Because They Would Result in a High Multiplier Would Penalize Class Counsel For Achieving a Favorable Outcome Too Early.**

Courts in this Circuit favor the percentage approach to awarding fees in common fund settlements for compelling reasons.  The percentage method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient and prosecution and early resolution of litigation."  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (quoting *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262, 2002 WL 31663577, at *25) (S.D.N.Y. Nov. 26, 2002).  The lodestar method, on the other hand, "create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits."  *Id.* (quoting *Baffa v. Donaldson Lufkin & Jenrette Secs. Corp.*, No. 96 Civ. 0583, 2002 WL 1315603, at *1 (S.D.N.Y. June 17, 2002); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 n.5 (9th Cir. 2002)) ("the lodestar method does not reward early settlement" and that "class counsel should [not] necessarily receive a lesser fee for settling a case quickly").

Reducing Class Counsel's fee request for the sole reason that the award would result in too high of a multiplier would penalize Class Counsel for acting responsibly on behalf of the Class and obtaining a favorable outcome relatively early.  *See Wal-Mart Stores*, 396 F.3d at 121 (the percentage method "provides a powerful incentive for efficient prosecution and early resolution of litigation."); *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000) ("[O]ne purpose of the percentage method . . . is to encourage early settlements by not penalizing efficient counsel . . . .") (internal quotation marks and citation omitted); *Beckman*, 293 F.R.D. at 482 ("While this [6.3] multiplier is near the higher end of the range of multipliers that courts

28

have allowed, this should not result in penalizing plaintiffs' counsel for achieving an early

settlement, particular where, as here, the settlement amount is substantial.").

 In addition to penalizing Class Counsel, endorsing such an approach would "encourage

costly litigation[] and potentially discourage able lawyers from taking such cases." *Gunter*, 223

F.3d at 198. Early settlements should be encouraged, when warranted, because "early settlement

allows class members to recover without unnecessary delay and allows the judicial system to

focus resources elsewhere." *Beckman*, 293 F.R.D. at 482; *see also Castagna v. Madison Square*

*Garden, L.P.*, No. 09 Civ. 10211, 2011 WL 2208614, at *6 (S.D.N.Y. June 7, 2011)

(commending plaintiffs' attorneys for negotiating early settlement); *In re Interpublic Sec. Litig.*,

No. 02 Civ. 6527, 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004) (early settlements should

be encouraged when warranted by the circumstances of the case). Granting the standard one-

third of the Maximum Settlement Amount here would help ensure that plaintiffs' attorneys have

ample incentive to act responsibly and efficiently, and to take on meritorious but riskier cases.

**IV. CLASS COUNSEL ARE ENTITLED TO REIMBURSEMENT OF EXPENSES UNDER THE SETTLEMENT AGREEMENT**

 Class Counsel request reimbursement of $41,615.99 in out-of-pocket expenses to be paid

from the Maximum Settlement Amount. "Attorneys may be compensated for reasonable out-of-

pocket expenses incurred and customarily charged to their clients, as long as they were incidental

and necessary to the representation of those clients." *In re Indep. Energy Holdings PLC Sec.*

*Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (internal quotation marks and citation

omitted); *see also Diaz*, 2010 WL 5507912, at *8 ("Courts typically allow counsel to recover

their reasonable out-of-pocket expenses." (citations omitted)). Here, Class Counsel's actual

expenses of $41,615.99 were incidental and necessary to the representation of the Class. Swartz

Decl. ¶ 62. These expenses include court fees, postage fees, transportation, travel expenses,

working meals, photocopies, electronic research, and Plaintiffs' share of the mediator's fees.  *Id.*, Ex. E (O&G Costs); Shavitz Decl. Ex. A (Shavitz Law Group Fee Summary); Kessler Decl. Ex. 2 (Shulman Kessler Fee Summary).  Furthermore, no Class Member has objected to the requested expense reimbursement.  Swartz Decl. Ex. B (Peneda-Sibley Decl.) ¶ 19.

**CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Motion for Attorneys' Fees and Reimbursement of Expenses, and enter an Order: (i) awarding attorneys' fees in the amount of $3,300,000.00 which represents one third of the Maximum Settlement Amount; and (ii) reimbursing $41,615.99 in out-of-pocket expenses that Class Counsel incurred in this action.

Dated: July 15, 2015
        New York, New York

Respectfully submitted,
**OUTTEN & GOLDEN LLP**

/s/ Justin M. Swartz
Justin M. Swartz

Justin M. Swartz
Deirdre Aaron
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000
Facsimile:  (212) 977-4005

**SHAVITZ LAW GROUP, P.A.**
Gregg I. Shavitz (admitted *pro hac vice*)
Susan H. Stern (admitted *pro hac vice*)
Keith M. Stern (admitted *pro hac vice*)
1515 S. Federal Highway, Suite 404
Boca Raton, Florida 33432
Telephone: (561) 447-8888

**SHULMAN KESSLER LLP**
Troy L. Kessler
Marijana F. Matura
534 Broadhollow Road, Suite 275

Melville, New York 11747
Telephone: (631) 499-9100

**WINEBRAKE & SANTILLO, LLC**
Peter Winebrake
Twining Office Center
Suite 211
715 Twining Road
Dresher, Pennsylvania 19025
Telephone: (215) 884-2491

*Class Counsel*